BROWNS
*vs*
BROWN'S AD'RS.

---

## Browns *vs* Brown's Administrators.

ERROR TO THE NELSON CIRCUIT.

*Gift of a chattel.   Mistake.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case* 106.

June 7.

IN 1837, James Brown became the security for the plaintiff in error, on a note to Peter Atherton for $700, borrowed money. In the spring or early in the summer of 1838, the note was paid off and taken in by the security, who shortly afterwards died intestate. His widow and J. G. Thomas administered on his estate, and in September, 1838, the plaintiffs in error executed their note to the administrators for the amount so paid by their intestate in discharge of the note to Atherton. Some time afterwards the widow of James Brown married the defendant, Carpenter, and the note of the plaintiffs in error to the administrators fell into his hands. The plaintiffs having made partial payments thereon, in 1841, took it in and gave their note to Carpenter for the residue, being $715 86. Upon this note Carpenter subsequently brought suit and recovered judgment. The plaintiffs in error then exhibited their bill alledging, in addition to the foregoing facts, that they were the natural sons of James Brown, deceased, and had been always so acknowledged and recognized by him; that being engaged in the mercantile business in a small way, they applied to him, in 1837, for some pecuniary assistance, and not having the money on hand himself, he had aided them

The case stated.

BROWNS
*vs*
BROWN'S AD'RS.

in effecting the loan from Atherton for $700, and had united with them in a note for its payment. They alledge that their reputed father possessed a large estate, and had often expressed his intention to aid and assist them, and in furtherance thereof that he paid off the note to Atherton for the $700. That the payment was an advancement and gift to them, and was so designed and expressly avowed by him. That they executed the note to the administrator, and afterwards the one to defendant, Carpenter, without consideration, without counsel or advice, and in entire ignorance of their rights and of the principles of law and equity. They make Carpenter and wife and the administrator, Thomas, defendants, pray for an injunction, that the administrators may be decreed to refund the amount paid them by the complainants on account of the discharge of the note to Atherton, and for general relief.

Defendant's answer.

The defendants answer and deny that the payment of the note to Atherton by the decedent was a gift or so intended by him. And Carpenter insists that whatever equity the complainants may have originally had, it was too late to set it up against him; that the claim had been received by the administratrix, his wife, on account of her interest in her former husband's estate.

Decree of Circuit Court.

The Court below dismissed the complainants bill and they have brought the case before this Court for revision.

Whether the money paid by James Brown, deceased, to Atherton, was or not a valid gift to the complainants is the main question for consideration.

Facts appearing in evidence.

That he always recognized the complainants as his children; manifested for them a good deal of parental regard and attachment; repeatedly expressed much solicitude for their welfare and his intention to *give them a start*, to assist them in their pecuniary affairs, is very conclusively established by the testimony. So far as appears from any thing in the record, the payment to Atherton was voluntary; there was no coercion nor was the decedent even requested to pay off the note. It is proved that he had a very ample estate, and was regarded in the section of the country where he resided, as a wealthy man. He had a wife, by whom he had several children,

but he expressed the same regard for the complainants and said *they felt as near to him* as his legitimate children. He stated that he intended to die without a will, and on that account intended to help the complainants during his life, as they would receive no portion of his estate after his death. Shortly after the payment of the money to Atherton, the deceased spoke of it as a gift to complainants, and said he intended to give them $500 more. He had conversations upon the subject with several persons, in which he invariably conveyed the same idea. He expressed a wish to see the complainants that he might give them the note, for fear, in case of his death, they never would get it. It appears that the complainants resided at the time about seventy miles from the deceased, and never saw him after he paid off the note. There is some testimony that a considerable time prior to the payment of this money, the decedent stated that he had given complainants all he intended to give them, and it is also in proof by one witness, that he examined the papers of the decedent after his death, which he found in much confusion, except his notes, which he found in a bundle, and the Atherton note among them. But a careful examination of all the testimony bearing upon this question—the declarations of the deceased in reference to the complainants before he paid the money—his uniform and repeated declarations afterwards as to his design and object in paying it—the relation between the parties—the very nature of the act, being in itself just and proper and one which every generous impulse in the breast of the father would stimulate him to perform for his unfortunate sons, irresistibly lead to the conclusion that the money paid in discharge of the note to Atherton was paid as a gift to the complainants, that it was so intended, so regarded, and so avowed by the donor.

But it is insisted, on behalf of the defendants, that although the money was so paid and intended as a gift, yet it lacks some of the essential requisites to constitute it one; that there must be a delivery of *the thing* or subject of the gift to render it complete and valid, and such, as a general rule, is no doubt the law. But the delivery must be according to the nature of the thing, and an actual de-

To constitute a valid gift of a chattel a delivery is, in general, necessary. But this must be according to the nature of the thing given, and if there is not an actual delivery,

BROWNS
*vs*
BROWN'S AD'RS.

an equivalent act must be done: (2 *Kent's Com.* 437–8.)

A payment of money by a father for his natural sons, for whom he was surety, to another, under the circumstances, held to be a valid gift of the amount paid.

livery so far as the subject is capable of delivery. If actual delivery be impracticable, then there must be some act equivalent to it: *Vide*, 2 *Vol. Kent's Com.* 437–8, and the authorities there referred to.

In this case it is urged that there was no delivery; but in order to determine what delivery was requisite, it may be inquired in what the gift consisted. The payment of the money in discharge of the note, we think, constituted the gift; the act was complete when the money was paid, if paid, as we have assumed, as a gift. The benefit was thereby conferred and was virtually received by the donees. The donor had parted with the possession of *the thing*, and with all control and dominion over it; he could not recall the money paid nor change the nature of the act. To render the gift perfect, it was not necessary to deliver the note to the donees. When paid, the note was *functus officio;* the liability upon it of those who had executed it, was extinct; no action could be maintained upon it against the donor or the donees. It was not the note or the delivery that constituted the gift, but its payment. If paid as a gift, the donor acquired thereby no right to demand the amount paid from the donees, nor did any cause of action thereby accrue to him against them. In this view of the case, we are of opinion that the administrators of James Brown had no claim against the complainants for the money paid Atherton by their intestate, and that so far as the note executed to them by the complainants embraced the amount and interest so paid, it was without consideration. The subsequent note given by the complainants to the defendant, Samuel Carpenter, and the judgment thereon at law, ought not to affect their right to relief. Upon the inter-marriage of Carpenter with the administratrix, he appears to have assumed the management of the estate; he and his wife are still connected with the administration of the estate, and he should be regarded, under all the circumstances, as occupying the attitude, in reference to the claim in contest, of his wife as administratrix.

We are, therefore, of opinion that the Court below erred in dismissing complainants' bill. The judgment at law should have been perpetually enjoined. And, upon

the principle that the payments made by the complainants to the administrators on account of the gift of their intestate to complainants, were made in ignorance of their rights and through mistake, we are of opinion the administrators should be decreed to refund the same.

The decree is, therefore, reversed and the cause remanded, that a decree may be rendered, perpetually enjoining the defendant, Samuel Carpenter, from the collection of his judgment at law against the complainants, and that the administrators of James Brown may be decreed to pay the complainants such sum as has been paid by them on account of the money paid by said James, in discharge of the note to Atherton, and to ascertain the sum so paid, a commissioner may be appointed.

As it appears a claim for about $60, which the administrators had against the complainants, was included in the first note they gave the administrators, that claim will be considered as discharged out of what has been paid by the complainants, and the decree against the administrators will be for the residue actually paid by complainants on account of the discharge, by the deceased, of the note to Atherton.

*Grigsby* for plaintiffs: *B. & A. Monroe* for defendants.