-CHIEE JUSTICE DUVALL
delivered the opinion oe. the court:
Hogan executed to Sally Knott his note for six hundred dollars, dated the 21st December, 1859, payable three years after date, the interest thereon to be paid annually. She, at the same time, executed and delivered to Hogan the following writing :
“ I have this day loaned to James H. Hogan six hundred (dollars,) for which he has executed his note at three years after date, interest to be paid annually if I require it. If I should not collect the said note during my lifetime, in that event my executor or administrator is hereby directed to surrender the .said note to the said James H. Hogan, as I intend it as a gift from me to him. Witness my hand, Dec. 21, 1859,
SARAH KNOTT.
Witness: E. B, Smith.”
Within less than a year after the execution of these writings Sally Knott died, and in March, 1862, her administrator brought this actiou.against Hogan, alleging that shortly after the death of his intestate the defendant produced the paper referred to, and demanded the surrender of the note, with which demand the plaintiff complied, under the mistaken belief that the defendant was entitled thereto. He claims that the defendant is bound upon said note, and should be compelled to restore the possession, and to pay the two instal-ments of interest which had accrued thereon.
*101 The defendant in his answer did not controvert the material facts, but resisted the right of the plaintiff to any relief, on the ground that, as the intestate had failed to collect or to require payment of the note in her lifetime, he was, by the express terms of the writing executed by her, discharged from liability on the note, and that it was properly surrendered to him.
No evidence was taken by either party, and the court below, on the pleadings and exhibits, rendered a judgment dismissing the action. From that judgment the plaintiff has appealed.
In support of the judgment it is insisted, by the appellee, that, as the two writings were executed at the same time, with reference to each other and to the same subject matter, they constitute but one agreement, and are to be construed as if written on the same piece of paper.
This is no doubt true. And the question then arises, what is the legal effect of the agreement, as evidenced by the two instruments? Can it be regarded as a valid executed gift of the six hundred dollars to the appellee, which a court of equity should enforce?
It is clear that the agreement is not within that class of gifts usually denominated gifts causa mortis. Such gifts, it is true, are, in general, conditional like legacies, but it is absolutely essential to them that they be made by the donor in his last illness, or in contemplation and expectation of death. If maintainable at all, therefore, it must be as a gift, simply so called, or a gift inter vivos.
. In relation to the various requisites of a valid gift, a vast amount of abstruse learning is to be found in the decisions of the courts, English and American, upon this subject. And conflicting as those decisions are upon most other points, it seems to be agreed, on all hands, that it is essential to every gift of this class, that it should be irrevocable by the donor.
This rule has been repeatedly recognized and acted on by this court. In the case of Duncan's adm'r. vs. Duncan, (5 Litt. 12,) the intestate had deposited certain bonds in the hands of one Hanks, telling him to keep them until he called for them; that his wife and her children were wasting his estate, and he *102 Was afraid to keep the bonds in his house, and if he did not call for them, they were to be given, after his death, to his. children by his first wife. The intestate was not then sick, but died in about six months, leaving a considerable estate ; the plaintiff had administered on his estate, and Hanks, shortly after his death, delivered the bonds to the donees. It was held that the court below was mistaken in supposing that the transaction amounted to a valid gift inter vivos; that “to the validity of such a gift' it is essential that there should be a delivery to the donee, and that the property of the thing given should immediately pass, and be irrevocable by the donor that there was no effectual delivery of the bonds, and the property thereof could not pass by the delivery to Hanks, who was a mere depository, and was bound to restore them when called on by the intestate, in whom, by the very, terms of the deposit, the property remained during his life, and the whole transaction was, therefore, revocable at his pleasure, and as a gift inter vivos it could not take effect. And that, as it was undoubtedly the intention of the intestate that the property of the bonds in question should, at his death, be vested in the defendants, and as such intention was not revoked in his lifetime, the transaction might have taken effect as a nuncupative will, if the requirements of the statute respecting such wills had been complied with.
The same principle was recognized in the subsequent cases of Walden's adm’r. vs. Dixon, (5 Mon., 170,) and Brown vs. Brown's adm’r., (4 B. Mon., 538.)
The analogy between these cases and the one before us is complete. Although there is some difference in the facts, the difference is not such as to justify the application of a different principle. Here the intestate loaned the money in question to the appellee; she retained in her own possession, during her life, his note for the sum loaned ; and she reserved, moreover, by the express terms of the contract, the absolute right, during her life, to coerce payment oí the debt and interest at the maturity of the note. As already shown, she died within less than a year after the execution of the writings and before any right had accrued to her to collect either the principal of the *103 sum loaned, or the first annual instalment of interest thereon. There had been, therefore, no opportunity allowed her to make the election which, by the writing, she reserved. This circumstance, however, is not considered decisive of the question in the view we have taken of it.
The expression with which the writing concludes — “as I intend it as a gift from me to him” — must of course be construed with reference to the previously expressed condition. It means simply that she intended it as a gift only in the event that she failed to collect it in her lifetime.
That this writing might, if established according to the requirements of the statute of wills, take effect as a testamentary disposition, cannot be doubted. But it is equally clear, upon the authorities cited, that it is ineffectual as a gift, although there are opposing authorities to be found in the decisions of other courts.
The judgment is therefore reversed, and the cause remanded for a judgment and further proceedings not inconsistent with the principles of this opinion.