CASE 72—ACTION ON GUARANTY—FEBRUARY 7.

# Louisville & Nashville Railroad Co. v. O. V. B. & Tr. Co., Trustee, Etc.

### APPEAL FROM HENDERSON CIRCUIT COURT.

"RIGHT OF WAY"—DAMAGES AND COSTS TO ABUTTING OWNERS.—A guaranty to indemnify a belt line railway against cost of "right of way" not exceeding $4,000 includes damages to abutting landowners and costs incurred in asserting same.

E. G. SEBREE Jr., FOR APPELLANT.

The language "right of way" was construed by the parties to embrace damages to abutting owners and costs. 19 Am. & Eng. Ency. of Law, 839; 21 Am. & Eng. Ency of Law, 405; Hortsman v. Covington & Lexington R. R. Co., 18 B. M., 221; Shrewsbury v. Tufts, 23 S. E., 692; Rose v. Eclipse Carbonating Co., 60 Mo. App., 28; Crown Coal & Tow Co. v. Yoch Coal Min. Co., 57 Ill. App., 666.

MONTGOMERY MERRITT AND JAMES M. YEAMAN, FOR APPELLEES.

The term "right of way" does not include damages to property-owners for the construction of the road. Black's Law Dict., "Right-of-way"; Am. & Eng. Eucy. of Law, title "Right-of-way"; Hortsman v. Covington, &c., R. R. Co., 18 B. M., 221; Ky. Stats., secs. 835 to 840.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The Henderson Belt Railroad Company in March, 1890, entered into an agreement with the appellant to construct in and near the city of Henderson a railroad about one mile and one-half in length, and running over the public streets of Henderson, as well as on certain private property. After such construction, appellant was to own and operate the railroad. In consideration of these premises, the appellant agreed to furnish to W. W. Shelby, president of the Henderson Belt-Line Road, and W. J. Marshall, vice-president of that company, on their individual responsibility, "and as the same might be needed, sufficient money to pay for the total cost of constructing said Belt Railroad, including the cost of material and right of way." The contract further provides that the second party (Henderson Belt Railroad Company and Shelby and Marshall) "guaranties that the right of way for said Belt Road shall not cost exceeding four thousand dollars."

The Belt Road Company proceeded to construct the rail-

way, and at its demand, and at the instance and request of Shelby, the appellant paid out, besides the sums necessary to construct the road, including the material therefor, the sum of $11,750, and this sum it now demands of Shelby's assignee in the settlement of Shelby's estate. The response to the claim by the assignee is that all but some $4,300 of it is for damages and costs successfully asserted against the Henderson Belt Road Company by abutting lot owners in the city of Henderson, arising out of the construction and operation of the road along the streets. This is admitted by the appellant, but it is asserted that the claim of an abutting owner, growing out of the proper construction and prudent operation of the road, is in law and was in contemplation of the contract involved here, a part of the cost of the right of way, and the total amount of such claim under the contract was not to exceed the sum of $4,000.

Turning aside a moment from the testimony introduced by both parties, without objection of either, to explain the terms of the contract, we find the settled law to be that a conveyance of land to a railroad, for a right of way, or the assessment and payment of damages under proceedings for condemnation of a right of way, precludes the owner from thereafter asserting further damages growing out of the prudent and proper construction and operation of the road. And this, because payment for the right of way is payment for all damages growing out of such use of the right of way as was contemplated by the contracting parties.

An undertaking, therefore, by one to furnish another with a right of way, is an undertaking that the latter shall be protected in the legal and proper use of such right of way. If this be not so, then the right of way, in fact and in

law, is not furnished.    Hortsman v. Lex. & Cov. R. R. Co., 18 B. Mon., 221; 3 Elliott on Railroads, Sec. 937.    It is for this reason that such damages to abutting owners are held to be a taking of private property, and for which a lien exists in favor of the owner.    Ball v. Maysville & B. S. R. R. Co., 19 Ky. Law Rep., 1540 [43 S. W., 731].

Waiving this question, and looking to the proof, the then vice-president of the appellant testifies that he suggested to Shelby and Marshall the importance of securing releases from the abutting property owners, and did so more than once, but they decided, on their own personal responsibility, not to apply for such releases, because they believed no claims of importance would be presented, unless the attention of the owners was called to such claims by an application for the releases.    Shelby alone testifies for appellees, and he does not deny these specific statements; but he does deny that there was any agreement or understanding that the cost of the right of way was to include damages to abutting property owners, and says, on the contrary, he understood that the right of way was only to include the right to pass over the private property.    Considering the uncontradicted and specific character of the testimony for the appellant, we conclude that, as matter of contract, the appellant was entitled, under the guaranty, to the use and occupation of the right of way free from claims based on the taking of the right of way.    It is to be borne in mind, however, that the appellant did not build this road.    In that event a different state of the case would be presented.    It simply honored the demands of the Henderson Belt Road Company and of Shelby, who, therefore, in making such demands, themselves construed the contract to include the claims in

dispute, else they could not have called on the appellant to pay them.

The judgment is reversed, with directions to allow the claims as general debts against the Shelby estate.