CASE 115—ACTION BY THE FIDELITY TRUST & SAFETY VAULT CO. FOR A SETTLEMENT OF THE ESTATE OF MRS. WILLIAM BOTTO, DECEASED.—APRIL 19.

## Louisville Presbyterian Theo. Sem. v. Botto.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS FIRST DIVISION.

FROM THE JUDGMENT DISMISSING THE ANSWER OF THE SEMINARY AND OTHERS, THEY APPEAL. REVERSED.

WILLS—CONTEST BY SOME OF LEGATEES—BENEFIT OF ALL—COSTS.

Held: 1. Kentucky Statutes, 1903, section 489, provides that if, in an action for the settlement of an estate, it shall appear that one or more of the legatees, devisees, distributees, or parties in interest have prosecuted for the benefit of others inter-

Louisville Presbyterian Theological Seminary v. Botto.

ested with themselves, and. have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such persons reasonable compensation for such trouble, and for necessary expenses, in addition to the fees and costs; said allowance to be paid out of the funds recovered before distribution. HELD that, where the effect of a contest by some of the legatees to set aside codicils was to increase the amount of legacies received by other legatees, their share of the estate should share the burden of the costs and expense of the contest.

2. Though the contest resulted in certain legatees receiving less than they would have received under the codicils, the same having been procured by their fraud and undue influence, their share should bear a portion of the expense.

WM. MARSHALL BULLITT, ATTORNEY FOR APPELLANTS.

### POINTS AND AUTHORITIES.

First point. Appellants, having a joint interest with others instituted proceedings whereby the common fund was preserved and recovered and brought into court for distribution among the joint owners. Therefore, the fees and expenses incurred by appellants in recovering the fund should be allowed out of it. Trustees v. Greenough, 105 U. S., 527; Hand v. Railroad Co., 21 S. C., 162; Adams v. Kehlor Milling Co., 38 F. R., 281; Strang v. Taylor, 82 Ala., 213; Bound v. South Carolina Ry. Co., 59 F. R., 509; Swedish Bank v. Davis, 71 Minn., 508; Central Railroad v. Pettus, 113 U. S., 116; Hobbs v. McLean, 117 U. S., 567; Davis v. Bay State League, 158 Mass., 434; Burden Central Co. v. Ferris Sugar Co., 87 F. R., 810; Harrison v. Perea, 168 U. S., 311.

Second point. It is immaterial that the Bottos opposed the contest of the codicils, because their opposition was the result of a fraudulent effort to secure the entire fund for themselves. Fechheimer v. Baum, 43 F. R., 719; Merwin v. Richardson, 53 Conn., 322; Anniston Loan & Trust Co. v. Ward, 108 Ala., 85; In re Weed's Estate, 163 Pa. St., 595.

Third point. Response to appellee's brief. Kentucky Statutes, sec. 489; Taylor v. Minor, 90 Ky., 544; Thirwell v. Campbell, 11 Bush, 163.

DODD & DODD, AND O'NEAL & O'NEAL, ATTORNEYS FOR APPELLEES.

1. Section 489, Kentucky Statutes, in connection with sections 428, 429 and 436, Civil Code, constitute the only basis for claims of the character asserted by the appellants.

2. We submit that the construction contended for by counsel, would open the door to abuses not contemplated by the Legislature as within the range of the acts and which would be mischievous in the extreme.

3. It has been repeatedly held by this court that the Kentucky Statutes in so far as they treat of any question, such as section 489, supra, must be regarded as containing a complete system, and such legislative enactment considered and treated as all of the law applicable to that question. Broaddus v. Broaddus, 73 Ky., 299; Milton v. Hunter, 76 Ky., 167; Sellers v. Com., 76 Ky., 333; Cochran v. Riply, 76 Ky., 503; Grigsby v. Barr, 77 Ky., 339; Lowe v. Phelps, 77 Ky., 651; *Ex parte* Herrick, 78 Ky., 27; Parrish v. Ferguson, 83 Ky., 18; Com. v. Watts, 84 Ky., 543; Patterson v. Com., 86 Ky., 318; Frantz v. Jacob, 88 Ky., 533; Patterson v. Com., 99 Ky., 615.

4. There is no allegation that any demand has been made on the personal representative to pay the extraordinary expenses sued for, or that it has ever refused to pay the same out of the corpus of the estate.

5. It is admitted that the funds in the hands of the personal representative are more than adequate to pay all such extraordinary expenses, if established against the estate. Then, how can appellant maintain this suit directly against the legatees until they have first established their claims against the personal representative? Sent v. Crawford, 100 Ky., 355; Wiggins v. Craycraft, 19 R., 477; Turner v. Gerald, 16 R., 30; Roberts v. Eales, 10 Rep., 360; Leslie v. Purcell, 9 Rep., 682; Culver v. Yocum, 9 R., 538; McChord v. Fisher, 13 B. Mon., 195; Brunk v. Means, 11 B. Mon., 217; Coon v. Nall, 4 Litt., 263.

FORCHT & FIELD, for WILLIAM M. BOTTO.

### POINTS AND AUTHORITIES.

Under section 489 of the Kentucky Statutes, a person can only recover attorney's fees or extraordinary costs or expenses where the parties have a common interest, and where one of said parties or a part of same, without objection from the others, prosecutes suits for their joint benefit, and then only such parties as are not represented in the case by attorneys selected by themselves are liable for a pro rata of such costs or attorneys' fees.

In the case at bar the parties did not have a common interest and were represented by different counsel, and therefore said section has no application. Thirwell v. Campbell, 11 Bush, 163;

Bailey v. Barclay, 22 Ky. Law Rep., 1244; Taylor v. Minor, 90 Ky., 544; Dougherty v. Cummings, 20 .Ky. Law Rep., 1948; Sims v. Birdsong, 21 Ky. Law Rep., 75, and 22 Ky. Law Rep., 1050.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

James F. Irvin, a resident of Louisville, died in March, 1883, leaving surviving him his widow, Florence Irvin, and one son, Guy F. Irvin, an infant. He left a large estate in the hands of the trustees for the benefit of his wife and son. The son died in 1895, intestate and unmarried. His will provided, in this contingency, that his wife should have the entire net income of his estate during her life, with the power to dispose of the entire estate in the event she failed to marry again and have children. On the 8th of January, 1896, Mrs. Irvin executed a will, in which she bequeathed to the following persons the sums set opposite their respective names:

| | |
|---|---|
| Louisville Presbyterian Theological Seminary... | $ 10 000 |
| Louisville Presbyterian Orphanage ............. | 10 000 |
| Charles R. Hemphill ......................... | 15 000 |
| Irvin Lindenberger ........................... | 10 000 |
| Philip T. Chinn ............................. | 3 000 |
| Total legacies to petitioners .............. | $ 48 000 |

Also:

| | |
|---|---|
| Belle C. McVey ............................. | $ 15 000 |
| Second Presbyterian Church .................. | 10 000 |
| Polytechnic Society of Kentucky .............. | 10 000 |
| Young Men's Christian Association .......... | 10 000 |
| John Norton Memorial Infirmary .............. | 10 000 |
| Anna Foster ............................... | 8 000 |
| Home of the Innocents ...................... | 5 000 |

| | |
|---|---:|
| St. James' Association, etc. ................... | $ 1 000 |
| Rodman Grubbs ............................ | 15 000 |
| Cloteal B. Botto ............................ | 15 000 |
| Wm. M. Botto ............................. | 35 000 |

| | | |
|---|---:|---:|
| Jane Ballard for life ................. | $ 6 000 | |
| Mary Costello for life ................. | 12 000 | |
| Jemima Johnson for life .............. | 12 000 | |
| Jane Jackson for life ................. | 12 000 | |
| Alex McHarry for life ................ | 12 000 | |
| | | 54 000 |

| | |
|---|---:|
| Total legacies to others ................... | $188 000 |
| Total legacies under original will ............... | 236 000 |

On the 30th of June, 1897, she executed a codicil, and on the following day, July 1, 1897, was married to William M. Botto, a young man many years her junior—about the age and an intimate friend of her dead son. On the 23d of April, 1898, and the 15th of January, 1900, she executed two additional codicils, the effect of which was to make a radical change in the disposition of her estate from that made in her original will. By these codicils the following legacies were revoked:

| | |
|---|---:|
| Louisville Presbyterian Theological Seminary .... | $10 000 |
| Polytechnic Society of Kentucky .............. | 10 000 |
| Young Men's Christian Association ............. | 10 000 |
| Philip T. Chinn ............................. | 3 000 |
| Total legacies revoked ................... | $33 000 |

The following legacies were reduced in the amounts, to wit:

| | |
|---|---:|
| $15 000 to Charles R. Hemphill reduced to ...... | $ 5 000 |
| 10 000 to Irvin Lindenberger reduced to ....... | 5 000 |

| | | |
|---|---|---|
| $10 000 to Louisville Presbyterian Orphanage reduced to .............................. | $5 000 | |
| 10 000 to Second Presbyterian Church reduced to | 5 000 | |
| 10 000 to John N. Norton Memorial Infirmary reduced to .............................. | 5 000 | |
| 15 000 to Belle C. McVey reduced to ........... | 1 000 | |
| 12 000 to Mary Costello reduced to ............. | 1 000 | |

$82 000 of legacies being reduced to ............. $27 000
—a reduction of $55 000.

The following legacies were given:

| | |
|---|---|
| Dr. W. O. Roberts ........................... | $ 5 000 |
| Newsboys' Home .., .......................... | 10 000 |
| Children's Free Hospital ...................... | 5 000 |
| Cloteal B. Botto, trustee for her niece Florence I. Harrison ................................ | 5 000 |

New legacies given ........................ $25 000

—While the legacies to her husband, Wm. M. Botto, and his mother, Cloteal B. Botto, were increased from approximately $50,000 to approximately $150,000, and the legacies to the Bottos and to some others were by the codicils made preferred devises. Mrs. Florence Irvin Botto died on the 12th of February, 1900, leaving an estate estimated to be worth about $200,000. The original will and the three codicils were duly probated on the 7th of March, 1900, and on the following day the Fidelity Trust & Safety Vault Company qualified as her executor. On the 30th of March thereafter, Hugh Irvin and some of the heirs at law of James F. Irvin prosecuted an appeal to the Jefferson circuit court from the order of the county court probating the will; and the Louisville Presbyterian Seminary, the Louisville Presbyterian Orphan-

age, Charles R. Hemphill, Irvin Lindenberger, and Philip T. Chinn, five of the legatees named in the original will, employed Thos. W. and Wm. Marshall Bullitt as their attorneys to have the codicils to the will of Mrs. Florence Irvin Botto set aside on the ground that they were fraudulent, and had been obtained by the undue influence and fraud of Cloteal B. Botto and W. M. Botto; and the cost, labor, and trouble of the conduct of this litigation fell upon these appellants and their attorneys. The trial in the circuit court occupied the entire month of December, 1900. Counsel for appellants spent nearly two months' time outside of the State of Kentucky, taking depositions, hunting up proof, and preparing the trial, expending in this necessary work nearly $27,000. A jury trial in the circuit court resulted in a verdict sustaining the original will and setting aside all three codicils upon the ground that they had been obtained by fraud and undue influence on the part of the Bottos. As a result of this contest, about $100,000 was secured to the devisees under the original will. After the termination of this contest, the Fidelity Trust & Safety Vault Company instituted this suit for a settlement of the estate, making all of the devisees and creditors of Florence Irvin Botto parties. The five contesting legatees filed their answer, counterclaim, and cross-petition against the executors and co-legatees, averring that the execution of the codicils had been obtained by the fraud of the Bottos; that they had employed counsel and secured the necessary testimony to show this fact; that none of the other legatees had participated in the expense of the preparation or trial of the contest; that they only had a common interest with the other co-legatees—and prayed that the extraordinary expenses and counsel fees incurred by them in making the contest for the benefit of all the lega-

tees should be allowed out of the common fund, and so re-covered before distribution. The remaining legatees demurred to this answer, counterclaim, and cross-petition; and the Bottos, who were legatees under the original will, filed their answer and cross-petition, in which they allege that the contest and the expense incurred therein by the appellants were hostile to their interest, and that they had employed at large expense their own counsel in defending the contest proceedings. Appellants replied to the answer of the Bottos that the expense incurred by them was wholly due to their fraud, deception, and undue influence in procuring the execution of the codicils, and in their efforts to uphold them. A general demurrer was interposed to this reply by the Bottos, and sustained, and appellants' answer and counterclaim, in so far as it sought to recover cost and expense incurred by them out of the common fund, dismissed, and they have appealed.

It is conceded by the demurrer that, if the codicils had stood, none of the legatees named in the original will would have received any substantial benefits therefrom, but that the whole estate left by testatrix would have been absorbed in the payment of the costs and expenses and the preferred devises made to the Bottos in the rejected codicils. The result of the contest made by appellants was to recover for the common benefit of the legatees under the original will a fund sufficient to pay between sixty per cent. and seventy per cent. of such devises. If the cost of this contest, including attorney's fees, is thrown upon the contesting legatees, they would receive a much smaller pro rata than their co-legatees, who were the equal recipients of the benefits resulting from such contest. It was to meet this state of case that section 489

of the Kentucky Statutes of 1903 was enacted. It provides: "In actions for the settlement of estate, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, if it shall be made to appear that one or more of the legatees, devisees, distributees or parties in interest have prosecuted for the benefit of others interested with themselves, and have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such person or persons reasonable compensation for such trouble, and for necessary expense, in addition to the fees and costs, said allowance to be paid out of the funds recovered before distribution, the persons interested having notice of the application for such allowance." In construing this section in Taylor, etc. v. Minor, etc., 90 Kentucky. 548, 12 R. 479, 14 S. W., 544, it was decided that the successful contestant of a will was not entitled to have the extraordinary cost of the contest paid out of the estate where the contest was for his benefit alone; the portion of the other heirs being diminished by the rejection of the will. But in the opinion in that case the court used this language: "Where, however, one person has prosecuted an action at extra expense and trouble, and the recovery inures equally to the benefit of others, the chancellor may, in the exercise of his power to compel parties to do equity, require them, as a condition to sharing in it, to contribute their proper proportion of the expenses, and may order it paid out of the common fund." In Boresig & Lawson v. Jarbo & Campbell, decided by the superior court, the syllabus of which is found in 13 Ky. Law Rep. 398, it was held that, where a creditor had successfully assailed a fraudulent conveyance made by an insolvent debtor with the design to prefer one or.

more creditors, the attorneys who brought the suit were entitled to a reasonable fee out of the estate for their services. And in Davis, etc. v. The H. Feltman Co., 65 S. W. 617, 23 Ky. Law Rep. 1513, the doctrine of the superior court was upheld, the court saying: "The H. Feltman Company instituted the suit, seeking to hold the mortgage of Davis to Walker & Sengstak void under the act of 1856; and their attorneys took all the proof upon the question, wrote the judgment, advised the receiver with regard to the management of the property, argued the case orally in the circuit court, and briefed it in the Court of Appeals. As a result of these services the mortgage to Walker & Sengstak for $16,000, with many years' interest, was set aside, and the property therein mortgaged inured to the benefit of all the creditors equally. If this mortgage had stood, the general creditors would have received practically nothing upon their claim, as in the end they only realized about thirty per cent. We think the attorney was entitled to a reasonable fee out of the estate for his services." In Mitchell v. Tyler & Apperson, 20 Ky. Law Rep. 1252, 49 S. W. 424, it was decided that attorneys who by their services have added to the assets of the trust estate are entitled to a reasonable fee, to be paid out of such increase, although they may not have represented the assignee, but have opposed him. The court in that case said: "Exception is taken to the allowance of a fee of $500 to Tyler & Apperson out of the trust fund. It appears that they were not employed by the assignee, and that their services were rendered in hostility to him, to make him account for the profit on the above property and on other exceptions to the settlement of his accounts. They were manifestly entitled

to a reasonable fee out of the additions made to the trust fund by reason o their services." In Mattingly's Trustee v. Mattingly, etc., 24 Ky. Law Rep. 2030, 72 S. W. 802, the above case was cited with approval; and it was decided that attorneys employed by the assignee to surcharge the settlement of the assignee, who succeeded in reducing his credits about $4,600, were entitled to an attorney's fee. And this seems to be the general doctrine. In the note to Campbell v. Providence Savings Loan Co. Society, decided by the Supreme Court of Tennessee, and reported in 54 L. R. A. 817, a large number of decisions bearing upon this question have been collated, and the editor of the note sums up his conclusions in these words: "The fees of attorneys for creditors who bring suit in behalf of themselves and other creditors will always be allowed out of the fund going to the creditors in the same class with the plaintiff, if the suit is beneficial to them, on the ground that otherwise the one incurring the risk and conferring the benefit will be in a worse condition than those who do nothing towards realizing the fund, although the mere fact that a suit proves beneficial to other creditors will not justify the allowance of such fees out of the fund, if the plaintiff brought the suit solely in his own behalf." These cases are not in conflict with Thirwell's Administrator, etc. v. Campbell's Guardian, etc., 74 Ky 163, as in that case all the parties to the litigation were represented by counsel who participated therein. The court in that case simply held that one jointly interested in a recovery, could not be compelled to pay counsel employed by others, when he had himself employed counsel to represent what appeared to be his interest. It seems to us that there can be no doubt in this case that all the co-legatees in the original will of Mrs. Florence Irvin

Botto equally shared in the benefits which accrued from the litigation instituted by the appellants for their common benefit. It is true that the contest of the codicils was inimical to the pecuniary interest of the two Bottos, W. M. and Cloteal B., who were the principal beneficiaries in the fraudulent codicils, and who were represented in the entire litigation by counsel of their own selection. But we can not shut our eyes to the fact that these defendants occupied a dual attitude. They were large legatees under the original will, as well as the chief beneficiaries of the alleged fraudulent codicils, to invalidate which all of the cost and expenses were incurred; and we are unable to see any reason why they should be exempted from the burden cast upon the legatees, especially as they were the chief, if not the only, upholders of these fraudulent codicils. In the case of Weed's Estate, Appeal of McGinnis, 163 Pa. 595, 30 Atl. 272, the litigation was instituted by the unsecured creditors of an insolvent estate to set aside conveyances made and judgment confessed by the trustee for the purpose of giving a preference to other creditors, and the litigation was resisted by the preferred creditors. It was decided that the counsel fees of the contesting creditors should be paid out of the trust estate. The court said: "Why should not the expenses incurred in achieving this result be paid out of the common fund, without discrimination between the parties entitled to it? What equity have the parties, who were baffled in their effort to obtain more than their share of the estate, to demand discrimination in their favor? We have failed to discover any. It was their greed for more than they were entitled to under the trust that made the expenses necessary, and it seems to us that, under the circumstances, they ought not to complain that the bur-

den of paying them is laid on the common fund. It is argued, however, that they were losers by the litigation, and therefore they are not within the rule recognized and enforced in Trustee v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, and kindred cases. But in what sense were they losers? In the same that he is a loser who fails to acquire what he has no right to, or who, having unlawfully obtained possession of the property of another, is compelled to restore it to the owners. The equity which the wrongdoer has in consequence of such a loss is not easily discoverable. If the allowance in this case was for services in a suit to recover the trust property from a stranger who had unlawfully taken it into his possession, there could be no doubt that equity would require that it should be paid from the trust fund. The fact that the wrongdoers were creditors of the estate ought not to shift the burden from the trust fund to that portion of it which the creditors were entitled to receive on a pro rata distribution of it. In either case the services were for the benefit of the estate, and it should pay for them." The same rule was followed in Anniston Loan & Trust Co. v. Ward, 108 Ala. 85, 18 South. 937, Merwin v. Richardson, 52 Conn. 322, and in numerous other cases cited and relied upon in the foregoing cases, and, in our opinion, is equitable and applicable to the facts of this case. The Bottos having occasioned all the cost and expenses incident to the rejection of the codicils, their share of the trust estate should not be exonerated from its part of these expenses. The other co-legatees being equal beneficiaries with appellants, should share the burden as well as the benefits of the litigation.

For reasons indicated, the judgment is reversed, and the cause remanded, with instructions to overrule the demur-

rers filed by appellees, and for further proceedings not inconsistent with this opinion.