### Baldwin's Exor. v. Barber's Exors.

(Decided December 11, 1912.)

### Appeal from Nelson Circuit Court.

1. Executory Gift—Promise to Forgive Debt—When Gift Not Perfected.—A promise by a payee to forgive a debt, the promisor being under no legal obligation to do so, is but an executory gift, and so long as the transaction remains executory, and the promisor retains the evidence of indebtedness, either in person or through his agent, the gift is not a perfected one, and no property passes to the promisee.

2. Executory Gift—When Paper Inoperative to Remit Interest—Will—Gifts Inter Vivos.—Where a creditor delivered to her agent a letter, directing him to thereafter collect interest upon only part of a debt owing by a debtor, the paper was inoperative to remit any interest due on the note, since the letter did not operate either as a will or as a gift inter vivos.

3. Contribution—Action—When Recovery Inures Equally to Benefit of Others.—Where one person had prosecuted an action at extra expense and trouble, and the recovery inures equally to the benefit of others, they will be required, as a condition to sharing in the recovery, to contribute their proper proportion of the expense, including attorneys' fees, which are to be paid out of the recovery.

4. Contribution—One Taking No Part in Successful Will Contest Must Contribute to Expense of Contest.—Where the devisee under a will stood indifferent between the parties contesting the will, and took no part therein, but was benefited by the contest, which was successful, he will be required to contribute to pay the fees of the attorneys for the successful contestants.

W. H. FULTON, KELLEY & CHERRY and G. S. & J. A. FULTON for appellants.

MORGAN YEWELL, NAT W. HALSTEAD, W. C. McCHORD, EDELEN & DAVIS, McCANDLESS & LARIMORE and C. T. ATKINSON for appellee.

RESPONSE TO PETITION FOR REHEARING BY JUDGE MILLER—Extending and Modifying Original Opinion.

The history of this litigation may be found in the original appeal of Barber's Exor. v. Baldwin, 138 Ky., 710, and in the opinion upon this appeal of the settlement suit of Baldwin's Exor. v. Barber's Exors., 148 Ky., 370.

In the petition for a rehearing our attention is called to the fact that in the opinion upon this appeal (148 Ky., 370), we failed to pass upon the ruling of the circuit court which failed to charge interest on the note of Lena Barber. That question was raised by the fifth exception to the commissioner's report, but, on account of the many other questions discussed, it was inadvertently overlooked. We will now dispose of it.

By Codicil C No. 3, Lena Barber was substituted as legatee in place of her husband, Philetus S. Barber. She owed Cecelia Barber $7,115.11, evidenced by a note. Cecelia Barber died on May 15, 1908. About four years previous to her death, however, Cecelia Barber wrote

the following letter to W. C. McChord, who was her agent, and had been named as executor in her will, to-wit:

"Springfield, Ky., August 15, 1904.

"Mr. W. C. McChord,
                    Springfield, Ky.
      Dear Sir:—

In view of the fact that my grandchildren are not paying interest on the advancements heretofore made by me, and as the advancements amount to about half as much as the advancement to P. S. Barber and the note which I hold against his wife, Lena Barber. You will therefore only collect from Lena Barber from this date interest on Four Thousand Dollars of her note, the residue of said interest from this date I now remit to her.

"CECELIA BARBER."

The executors paid Lena Barber her legacy of $5,-000.00 on February 14, 1911, with interest to that date. In their settlement the executors charged her interest on $4,000.00 from August 15, 1904, to February 20, 1911, the date of the report, but did not charge or collect any interest on the balance of her note amounting to $3,-115.11, after August 15, 1904. They justified their failure to collect interest on the $3,115.11 under the letter above set forth. Amelia Baldwin's executor contends, (1) that the letter of August 15, 1904, was ineffective to absolve Lena Barber from the payment of interest on said $3,115.11, for any period of time; and (2) that in any event the remission of interest thereon could not extend further than to the death of the payee, Cecelia Barber, on May 15, 1908.

By the judgment of the lower court, of December 8, 1909, which was afterwards affirmed by this court, the executors of Cecelia Barber were directed to pay the various legacies, with interest thereon from May 15, 1909, which was one year after the testatrix' death, as is provided by the statute; and, in that judgment the $5,000.00 legacy to Lena Barber was set out. When the executors paid this legacy on February 14, 1911, it amounted, with interest, to $5,525.00. And the court having refused to charge her with interest on the $3,115.11, either before or after the death of the testatrix it was insisted by appellants that the $3,115.11 should be applied in diminution of the legacy as of the time the

legacy, under the law, would begin to bear interest, to-wit, May 15, 1909. If this had been done only the excess of the legacy over the $3,115.11, or $1,884.89 would have continued to bear interest from May 15, 1909 until its payment on February 14, 1911. But the court not only refused to do this, and allowed Lena Barber interest upon her entire legacy from May 15, 1909, to February 14, 1911, the date of its payment, but also refused to charge her with interest on the $3,115.11 during that period. The difference between the interest on the $5,-000.00 for twenty-one months, and interest on the $1,-884.89, for the same period, is $305.09.

Appellant's exception, however, goes farther than a mere setting off of the $3,115.11 against the legacy, and insists that the paper of August 15, 1904, was not effective to remit or abate the interest on any portion of said note, for any time. This contention is based upon the idea that in order for this paper to have any effect it must be good either as a will, or as a gift *inter vivos,* and that it is not effective in either respect. The paper not being holographic, and not having been attested by witnesses, it could not have been probated as a part of Cecelia Barber's will, and no attempt was made to do so. It is not contended that it operated as a will.

Did it operate as a gift *inter vivos;* or, to put it in another form, did it operate as a remission of interest from that date, which would be, in fact, a gift?

The test as to the sufficiency of the writing to effect a gift is the determination of its irrevocability at the time the donor placed the paper with her agent and nominated executor, McChord. If, at that time, the gift was an irrevocable one, and completely separated Mrs. Barber from the ownership and control of the future interest on this sum, and was not merely ambulatory and subject to recall, then the gift of this interest to Lena Barber was complete; otherwise not, and the paper relied on by the executors was wholly ineffective for any purpose. It is conceded that McChord was acting for Cecelia Barber throughout the transaction; he, in no sense, represented Lena Barber, the debtor. It is clear, therefore, that Cecelia Barber could have withdrawn the paper, or its operation, at any time, with or without the consent of Lena Barber. If Cecelia Barber, in her lifetime, had brought suit upon the note, claiming interest according to its terms, and disregarding the paper of August 15, 1904, could Lena Barber, although she

might have learned of the execution of the paper, and its delivery to McChord, have relied upon it to escape the payment of interest on this $3,115.11? We think it is clear that she could not have made such a defense; and, if she could not have made a defense against Cecelia Barber in her lifetime, we do not see how she could make that defense against Cecelia Barber's executors, since the effectiveness of the paper as a gift did not depend upon whether Cecelia Barber actually revoked it, but whether it was revocable.

In the leading case of Basket v. Hassell, 107 U. S., 602, the court, after reviewing at length the authorities bearing upon this question, said:

"The point which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think, that the instrument or document must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift *inter vivos,* but upon the recognized conditions subsequent, in case of a gift *mortis causa;* and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation according to its terms, will not suffice."

In 20 Cyc., 1208, the rule as to gifts, insofar as it applies to the forgiveness of the donee's debt is thus stated:

"A debt due from the donor to the donee may be forgiven as a gift, and when the transaction is complete, the debt is extinguished and cannot be enforced afterward. A promise by an obligee or payee to forgive a debt, the promisor being under no legal obligation to do so, is but an executory gift, and so long as the transaction remains executory, and the promisor retains the evidences of indebtedness, the gift is not a perfected one and no equity passes to the promisee thereby. The usual method of making a gift of a debt is for the donor to cancel and deliver to his obligor the evidences of his indebtedness, thereby indicating a forgiveness thereof, or a destruction thereof by the obligee with intent to release. However, a gift of a debt due by parol can be made only by the creditor's execution of a release in writing, or the performance of some act by which the debt is placed beyond his legal control."

See also, Knott v. Hogan, 4 Met., 99; Brown v. Brown, 4 B. Mon., 535; and Rodemer v. Rettig, 114 Ky., 634.

The interest on the whole note from August 15, 1904, to February 20, 1911, is $2,782.00; while the interest on the $4,000.00 for the same period is $1,564.00, showing a difference of $1,218.00 which Lena Barber yet owes, if the rule above announced is to be applied. We do not see how the application of the rule, under the facts of this case, can be avoided. The paper applied only to future interest, and was revocable at any time. It never passed beyond the donor's control; it was never delivered to Lena Barber, or to any one for her. In our opinion, the paper was not effective for any purpose, and the executors should have ignored it, by collecting interest upon the note according to its terms.

2. In the opinion we approved the ruling of the chancellor that John R. Barber was not individually liable, by way of contribution or otherwise, for any portion of appellants' counsel fees, or costs. (148 Ky., 378.) It is urgently insisted by the appellants in their petition for a rehearing, that the ruling is inconsistent with the opinion of this court in Louisville Presbyterian Seminary v. Botto, 117 Ky., 962; and that if the court intends to adhere to the ruling made in this case, it should overrule the Botto case. Under the rule of the Botto case it is insisted that appellants' attorneys' fee in the successful will contest, in the construction suit, and for the trial of the exceptions to the commissioner's report, should be assessed *pro rata* against John Barber and paid out of the common or residuary fund of the estate.

John Barber was a legatee under the original will to the extent of $9,000.00. He was not represented by counsel in any of the litigation instituted by the appellants, but stood indifferent as to the result. The effect, however, of that litigation was to increase his share of the estate to an amount claimed by appellants, approximating $25,000.00. Appellees insist that his gain was not that much, but the precise amount of his gain is not now material. It is further true that the interest of his children under the original will was lessened by the result of the will contest, and the father's gain was, to some extent, their loss.

The pioneer case upon this subject in this State is Thirlwell's Admrs. v. Campbell, Guardian, 11 Bush, 163. That was an action to sell land owned jointly, and in-

volved the trial of exceptions to the report of settlement of a personal representative, being in the last named respect similar to the case at bar. All the parties to the action desired a sale of the land, and three of the defendants employed counsel of their own, who represented them throughout the litigation, while four of the parties were not represented by counsel. As to the exceptions to the report of settlement, all of these parties were either indifferent or opposed to the exceptions. The court rested its decision requiring contribution from those not represented by counsel, upon the act of March 1, 1860, as amended in 1867, which related to contribution between legatees, devisees and distributees, where one had prosecuted an action for the benefit of others. The Act of 1860 above referred to is substantially reproduced as section 489 of the Kentucky Statutes, which reads as follows:

"In actions for the settlement of estates, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, if it shall be made to appear that one or more of the legatees, devisees, distributees or parties in interest have prosecuted for the benefit of others interested with themselves, and have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such person or persons reasonable compensation for such trouble, and for necessary expenses, in addition to the fees and costs; said allowance to be paid out of the funds recovered before distribution, the persons interested having notice of the application for such allowance."

In the course of its opinion in the Thirlwell case, the court said:

"Appellee insists that under these acts he has a right to have his counsel paid out of the general fund; yet his counsel in their argument concede that several of the distributees thus sought to be charged with fees were indifferent to the result, if indeed they were not opposed, as some of them certainly were, to the efforts made by plaintiff to surcharge the settlement which involved the principal amount of labor done by his counsel in the case.

"We construe these acts as applying only to such parties as are not represented in the case by attorneys selected and employed by themselves. * * *

"So far as those parties are concerned who were not represented by attorneys selected by themselves, we think

the services rendered by the counsel for the appellee in procuring a sale of the real estate and in surcharging the settlement fall within the provisions of the statutes *supra,* and for such services they should be paid out of the common fund.''

In construing section 489, in Taylor v. Minor, 90 Ky., we said:

''Where, however, one person has prosecuted an action at extra expense and trouble, and the recovery inures equally to the benefit of others, the chancellor may, in the exercise of his power to compel parties to do equity, require them, as a condition to sharing in it, to contribute their proper proportion of the expenses, and may order it paid out of the common fund.''

In other words, it was held that the recovery should bear its own expenses, and the attorneys' fees of all persons who participated in the recovery, except those who specially employed counsel to represent them, should be paid out of the fund recovered.

It is insisted, however, that since John R. Barber, through his children, will lose more than he will himself gain in the will contest, he is not within the meaning of the statute, and should not be required to contribute. We can see no difference, however, in principle, between the Botto case and the case at bar. In the Botto case, W. M. Botto, and his mother Cloteal Botto, were the principal beneficiaries of certain codicils, which were finally invalidated, and were represented throughout the entire litigation by counsel, of their selection; and they were beneficiaries, in a smaller way, under the will as it was finally established. It was contended there, as here, that the statute did not apply to them, and that they should not be required to contribute to the fees of counsel who, against their wish, had succeeded in setting aside the fraudulent codicils, and thereby increasing the general estate. As above stated, the Bottos were represented by counsel in their effort to sustain those codicils. In this respect their case was stronger than Barber's case. Nevertheless, they were required to contribute to the payment of counsel fees for the contestants. After reviewing at some length the decisions of this court bearing upon section 489, and the question generally, the court there said:

''These cases are not in conflict with Thirlwell's Admr., etc. v. Campbell's Guardian, etc., 74 Ky., 163, as in that case all the parties to the litigation were repre-

sented by counsel who participated therein. The court in that case simply held that one jointly interested in a recovery, could not be compelled to pay counsel employed by others, when he had himself employed counsel to represent what appeared to be his interest. It seems to us that there can be no doubt in this case that all the co-legatees in the original will of Mrs. Florence Irvine Botto equally shared in the benefits which accrued from the litigation instituted by the appellants for their common benefit. It is true that the contest of the codicils was inimical to the pecuniary interest of the two Bottos, W. M. and Cloteal B., who were the principal beneficiaries in the fraudulent codicils, and who were represented in the entire litigation by counsel of their own selection. But we cannot shut our eyes to the fact that these defendants occupied a dual attitude. They were large legatees under the original will, as well as the chief beneficiaries of the alleged fraudulent codicils, to invalidate which all of the cost and expenses were incurred; and we are unable to see any reason why they should be exempted from the burden cast upon the legatees, especially as they were the chief if not the only, upholders of these fraudulent codicils." (117 Ky., 972.)

Counsel for Barber, however, insist that the decision in the Botto case was rested upon the fact that the Bottos were guilty of fraud, in that they were the chief, if not the only beneficiaries and upholders of the fraudulent codicils, and therefore cast upon the contestants the burden of undoing their fraudulent acts. While there is some language used in the opinion giving color to that claim, a careful reading of the opinion will show that the decision really rests upon the broader ground that the recovered fund must pay its own attorneys' fees, and as the Bottos were participants in that recovery, the rule applied. This is easily apparent from the following quotation taken by the court from Weed's estate, Appeal of McGinnis, 163 Pa., 595, to-wit:

"It is argued, however, that they were losers by the litigation and therefore they are not within the rule recognized and enforced in Trustee v. Greenough, 105 U. S., 527, 26 L. Ed., 1157, and kindred cases. But in what sense were they losers? In the same that he is a loser who fails to acquire what he has no right to, or who, having unlawfully obtained possession of the property of another, is compelled to restore it to the owners. The equity which the wrongdoer has in consequence of

such a loss is not easily discoverable. If the allowance in this case was for services in a suit to recover the trust property from a stranger who had unlawfully taken it into his possession, there could be no doubt that equity would require that it should be paid from the trust fund. The fact that the wrongdoers were creditors of the estate ought not to shift the burden from the trust fund to that portion of it which the creditors were entitled to receive on a pro rata distribution of it. In either case the services were for the benefit of the estate, and it should pay for them."

We conclude, therefore, that the case at bar comes within the principle announced in the Botto case, and that John R. Barber's share of the recovery should contribute to the payment of appellant's counsel fees for effecting the recovery. So much of the former opinion found on pages 378 and 379 of 148 Ky., as holds otherwise, is withdrawn, and that opinion is modified to the extent above indicated.

It is suggested in the briefs, that this court now fix the fees of appellant's counsel. That question, however, should be tried by the lower court, upon preparation duly made. Counsel fees should be fixed upon evidence taken, as in other cases; and, as the fee in this case is to be measured by the recovery when considered in connection with the services rendered, the precise amount of the recovery should be ascertained. In the record before us, counsel vary widely in their estimates as to the result of appellant's exertions.

So much of the judgment of the circuit court as declined to charge Lena Barber with interest upon any portion of her note after August 15, 1904, is reversed; so much of that judgment as declined to charge John R. Barber with any portion of appellant's counsel fees is reversed; and the cause is remanded for further proceedings consistent with this opinion.