Alvin GREENE and Tom Foree, Executors of
the Estate of S. R. Jones, De-
ceased, Appellants,

v.

B. C. COTTON and Gladys Cotton,
Appellees.

Court of Appeals of Kentucky.

May 1, 1970.

Rehearing Denied Sept. 25, 1970.

William F. Threlkeld, Williamstown, for appellants.

Charles Landrum, Jr., Landrum, White & Patterson, Lexington, Lee B. Lanter, Williamstown, for appellees.

DAVIS, Commissioner.

The critical question is whether a writing by decedent S. R. Jones legally accomplished the cancellation and release of a promissory note which B. C. Cotton and his wife, appellees, had executed to Jones. The circuit court held that it did. There are other questions presented by appellants, but our view of the case makes it unnecessary to consider or discuss them.

On August 17, 1955, the Cottons executed and delivered to S. R. Jones their promissory note in the sum of $72,000 bearing 5% interest and secured by mortgage on real estate in Grant County owned by the Cottons. Various payments on the note had reduced the principal due to $38,400 at the date of the death of Jones on May 2, 1967.

The appellants, executors of the will of Jones, found among Jones' effects a key to a lockbox at Citizens Bank of Dry Ridge. Upon inspecting the contents of that lockbox, they found an envelope bearing the typewritten address:

"To admrs. of my estate

"S. R. Jones"

Within the envelope was found a typewritten paper signed by S. R. Jones, which recited:

"I, S. R. Jones hereby request that if B. C. Cotton be living at the time of my death and if there is an unpaid balance on his note and mortgage to me that same be released and the note and mortgage returned to him marked paid.

Dated July 7, 1966.
                              /s/ S. R. Jones"

B. C. Cotton was president of Citizens Bank of Dry Ridge, and there was evi-

dence that Cotton knew that Jones had executed a paper purporting to cancel the note. However, Cotton never received physical possession of the paper, nor did he (or anyone other than Jones) have a key to Jones' lockbox. It appears that the last credit on the note was made on July 7, 1966, the date of the purported release. It also appears that Jones kept the typed release in his own office until Tuesday, April 28, 1967, on which date he placed it in the lockbox at Dry Ridge. His death ensued on Saturday, May 2, 1967.

Pursuant to a finding by an advisory jury, and in overruling appellants' motion to set aside the findings reported by the jury, the trial judge recited as one finding of fact:

"S. R. Jones intended to renounce the note and his right, title and interest therein, without the necessity of actually relinquishing control of the note itself."

That finding, so far as it is considered as a *factual* finding, is obviously not clearly erroneous, so it will not be disturbed. CR 52.02.

But, that finding of fact does not lead to the trial court's conclusion of law that the *intended* release legally accomplished its purpose. It is manifest that the release was an "iffy" thing. By its own terms it noted its applicability only "if" B. C. Cotton were alive at the time of Jones' death and "if" there then remained an unpaid balance due to Jones on the note. It is not contended, as it could not be, that the release was executed with the formality required for a will.

Patently, Jones was mindful when the release was typed that Cotton might make further payments on the note—indeed that it might be fully paid. Clearly, he did not purport to remit the debt except on the contingency that Jones should die before the death of B. C. Cotton. Most importantly, Jones never delivered the release to Cotton and never parted with dominion over it. Nobody but Jones, or his qualified personal representatives at his death, had any right to enter the lockbox. If Jones had elected to sue on the note, Cotton could not have interposed the release as a defense. If Jones had changed his mind, he could have destroyed the release or modified it, and Cotton would have had no recourse. In short, we agree with the trial judge that Jones thought he had done all that was legally required but that fact, without more, did not accomplish the intended result.

KRS 355.3–605(1) (b), in treating the legal requirements for cancellation and renunciation of a note, provides that the result may be achieved:

"(b) by renouncing his rights by a writing signed *and delivered* or by surrender of the instrument to the party to be discharged." (Emphasis supplied.)

■ The rationale of Baldwin's Ex'r v. Barber's Ex'rs, 151 Ky. 168, 151 S.W. 686, is particularly apposite here. As noted in Baldwin's Ex'r, a test respecting sufficiency of a writing attempting to effect a gift is irrevocability, vel non. Since there is no claim of a contract to release supported by consideration, the release must stand or fall as a gift. It falls.

The view we have expressed is generally accepted. Cf. 63 A.L.R.2d 278, where it is written in part:

"It may be stated as a general rule that a mere statement, declaration, or memorandum by the creditor to the effect that he gives, has given, or intends to give the debt to the debtor, that he does not desire or intend that the debt shall be paid or collected or that the amount remaining unpaid at his death is to be forgiven, is ineffectual for such purpose."

Some of the decisions of this court supporting that view include Duncan's Adm'rs v. Duncan, 15 Ky. (5 Litt.) 12, and Harrell v. Westover, Ky., 283 S.W.2d 197.

■ As was recently observed in Compton v. Compton, Ky., 435 S.W.2d 76, despite

the *intention* of a donor to effect a transfer of a bank account, the failure to comply with legal requirements cannot be supplied merely by noting the abortive attempt to carry out an intention.

It follows that the court erred in entering judgment for appellees and dismissing appellants' counterclaim on the note.

The judgment is reversed for proceedings consistent with the opinion.

HILL, C. J., and MILLIKEN, OSBORNE, PALMORE, and STEINFELD, JJ., concur.

REED, J., not sitting.