## Ratliff et al. v. Ratliff et al.

June 7, 1940.

R. Monroe Fields, Judge.

Frank W. Stowers for appellant.

A. F. Childers for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

In Ratliff v. Ratliff, 277 Ky. 794, 127 S. W. (2d) 838, the appeal was dismissed for the reasons therein stated but without prejudice to the present appellant, Mrs. Gracie Ratliff, prosecuting an appeal individually and on behalf of the other distributees of the estate of William Ratliff, deceased. On motion duly made in this court, Mrs. Ratliff was granted this appeal to be prosecuted on the same record filed in the former appeal. The facts in the instant case are given in 277 Ky. 794, 127 S. W. (2d) 838, and we will repeat here only so much of them as may be necessary for a determination of this case.

The administrator's plea of non est factum on behalf of his decedent placed the burden upon the appellees of proving the name of William Ratliff was legally signed to the receipt which they contend represented a gift to them from him of the balance due on the note, Taylor's Adm'r v. Scott, 218 Ky. 302, 291 S. W. 393; Simpson v. Simpson, 276 Ky. 223, 123 S. W. (2d) 816. Appellees introduced only two witnesses, J. Albert Ratliff, a son of deceased, who was the co-maker of the note with his wife, and Fred Cox. It is admitted by appellees that under Section 606, Subsection 2, of the Civil Code of Practice, J. Albert Ratliff is not a competent witness to testify for himself against his father's estate as to conversations and transactions he had with his father. However, he attempts to argue he was a competent witness for his wife, who did not testify, contending that he was acting as her agent. There is nothing in this record to show he was agent for his wife in this transaction; but if he were his wife's agent while obtaining this receipt from his father, he would not be a competent witness for her. Albert Ratliff and his wife are joint makers of the note sued on and their interests are identical, therefore, he cannot testify for her without testifying for himself, and Section 606, Subsection 2, of the Code will not permit him to do this where he is testifying as to transactions with a deceased person. Ray's Ex'r v. Bridges, 247 Ky. 459, 57 S. W. (2d) 492. The chancellor properly sustained exceptions to the deposition of J. Albert Ratliff.

This leaves only the witness Fred Cox to sustain appellees' burden that the signature on the receipt was genuine. Cox testified of going to William Ratliff's store one night with the appellee, Albert Ratliff, who

said to his father that he had come to pay the note, whereupon the father replied that he had not found the note, but he would give him a receipt; that Albert then wrote the receipt on the typewriter and his father signed it. Nobody was present but the witness, William Ratliff and Albert. The administrator introduced but two witnesses, Fred J. Martin and Trimble Molton, who testified to only one fact, to-wit, the general reputation of Cox for truthfulness, and each testified it was bad. The testimony of Cox is not at all convincing and any value it might have is greatly reduced, if not destroyed, by his being impeached. Especially is this true, when no proof was offered by appellee to support his reputation after he was impeached.

Mr. Ratliff was a successful and prominent business man in his community, who operated a store, transacted a good bit of business and possessed considerable wealth. His signature must have been known to his banker and to others with whom he had business, and it should not have been difficult for appellees to have introduced a large number of witnesses of character and standing to prove whether the name of William Ratliff as it appears on this receipt was his genuine signature. It is strange Albert offered no witnesses to prove his father's signature except Cox who was not impressive as a witness and who had no standing in the community. Appellees appear to have been under the impression that as the administrator pleaded non est factum, the burden was on the administrator to prove the signature to the receipt was not genuine. An examination of the authorities cited above, as well as those mentioned in the Simpson case, supra, will show they are in error.

It is Albert's contention his father gave him the balance due on this note and the note then being lost, therefore incapable of delivery, his father executed to him the receipt showing the note to be satisfied in full, which amounted to a gift inter vivos, citing 12 R. C. L. 944; McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638; Brown v. Brown's Adm'rs, 4 B. Mon. 535, 43 Ky. 535. These authorities are to the effect a debt may be the subject of a gift by a creditor to his debtor and they contain a correct statement of the law. But gifts inter vivos are closely scrutinized by courts, especially where the donor and donee

occupy confidential relations and it takes clear and convincing evidence to sustain them; 28 C. J. 676, Section 82; O'Brien's Adm'x v. Murray, 258 Ky. 140, 79 S. W. (2d) 414; Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S. W. (2d) 915. The evidence in this record is neither clear nor convincing that William Ratliff made a gift to his son, Albert, of the balance due on this note by the alleged execution of the receipt of Aug. 30, 1932, reciting $1,200 was received from him "for note in full." There is nothing to connect the note sued on with the note mentioned in the receipt. Cox testified that William Ratliff could not find the note the night he is supposed to have executed this receipt, yet the note bears a credit of $500 on August 30, 1932, the exact date of the receipt. It matters not whether this credit is in the writing of William or Albert, it cannot be reconciled with the statement of Cox that William Ratliff said he could not find the note but would execute a receipt to Albert. To say the least, somebody is badly mistaken about the transaction.

The petition filed by William Ratliff alleged that the note had been wrongfully taken from his trunk, but by an amendment filed December 4, 1935, he averred the note had been found and in this pleading he sets out the various credits on the back thereof. Instead of Albert and his wife answering the petition as amended and pleading the gift from William, they filed a general demurrer to both pleadings on December 6, 1935. William Ratliff died on February 3, 1936, and it is most significant that the makers of this note did not plead a gift until after the payee's death. The assertion of a gift after the death of the alleged donor is ever open to suspicion, Moore's Adm'r v. Edwards, supra; but that suspicion is magnified in the instant case where the donor had filed a verified petition seeking to collect this note and the appellees did not file their answer pleading a gift until after the donor's death. Albert's delay until after the death of his father before filing answer to the petition and the amended petition casts such a cloud over his ordinarily suspicious plea as to brand it as practically spurious. The fact that the administrator of William Ratliff, and a brother of Albert, filed a motion to dismiss the action without prejudice, confirms our belief that such a plea is not genuine. This motion was made by the administrator after the proof was taken, and after the case had been briefed and was in

the hands of the chancellor for decision; it was made without the knowledge or consent of his attorney who was prosecuting the action. It is difficult not to believe that there was some collusion between Albert and the administrator when this motion was made. It was the administrator's duty to prosecute this suit and if he were not in collusion with Albert why did he attempt to dismiss it without the knowledge of his attorney? If the administrator were in good faith when he stated in the motion he believed the note had been satisfied during his decedent's lifetime, he would have told his attorney to move to dismiss, and upon the attorney's refusal there would have been nothing irregular in the administrator making the motion.

While the chancellor's findings are entitled to some weight, we reserve the right to examine the record ourselves, and when the evidence does not support the chancellor's judgment we do not hesitate to reverse it. Stege v. Stege's Trustee, 237 Ky. 197, 35 S. W. (2d) 324; Davis v. Dean, 236 Ky. 362, 33 S. W. (2d) 340. A careful review of this record leaves no doubt in our minds that the chancellor erred in finding that William Ratliff made a gift of the balance due on this note to his son, J. Albert Ratliff.

The chancellor is directed to enter a judgment for the administrator for the face of the note with 6% interest thereon from maturity (one day after date), subject to the three credits shown on the back of the note. The third credit of $700 shall be adjudged to have been made on Aug. 30, 1932, the date appearing just above it.

Judgment reversed.

Judge Ratliff not sitting.