Kathleen Boyd **MUNDAY** and Turner, Dixon and Kemp, Attorneys, **Appellants,**

v.

William Porter **MUNDAY, Appellee.**

Court of Appeals of Kentucky.

March 16, 1979.

Rehearing Denied July 13, 1979.

Paul K. Turner, Turner, Dixon & Kemp, Hopkinsville, for appellants.

Milburn C. Keith, Keith & Myers, Hopkinsville, for appellee.

Before COOPER, LESTER and WILHOIT, JJ.

COOPER, Judge.

This is an appeal from a judgment in the Christian Circuit Court concerning division of property, maintenance and attorneys' fees from the dissolution of marriage of Kathleen Boyd Munday and William Porter Munday.

The appellant, Kathleen Boyd Munday, age forty-four (44), and the appellee, William Porter Munday, age forty-five (45), were married on September 19, 1970, in Hopkinsville, Kentucky. There were no children born of this marriage; however, it was the second marriage for each of the parties and each of them had children by their previous marriages.

At the time of the marriage, appellant owned her own home in Hopkinsville. She also owned her automobile, her country club stock, and approximately $2,500 in her checking and savings accounts. She was employed as a receptionist at Bass and Company where she drew a salary and received medical insurance coverage free, plus a retirement plan.

Appellee has been employed as an investment security salesman and manager for J.J.B. Hilliard & Lyons, Inc. in Hopkinsville and Bowling Green, and continued in that employment throughout the marriage. The appellee moved into appellant's house after the marriage and continued to live there approximately 2 to 2½ years when the home was sold. Appellant testified that she received a net proceeds check of $17,300 which she endorsed and gave to appellee at his request, and she did not know what he did with the money once she gave it to him. When asked what happened to the proceeds from the sale of the house, the appellee stated in his first deposition, "It's really impossible to trace that money. I don't know if the money was spent or used to purchase the residence or securities or anything." (The reference to "residence" refers to the present residence of the parties.)

However, he later testified that he believed these funds were placed in a joint account for the benefit of appellant and that she spent them, which she denied. Nowhere in the record has the appellee ever denied that he received the check for $17,300 which appellant was paid for her own residence.

During the pendency of the action, appellant was awarded the marital residence as a home for herself and her two daughters (one of whom was in college) and $1,000 per

month temporary maintenance, with appellee paying all mortgage payments, insurance and taxes on the family residence.

During the marriage, appellee set up a Clifford-type Trust for appellant's children with a principal of $10,145, naming the appellant as trustee, with the principal to revert to appellee in 1984. Additionally, without appellant's knowledge, he transferred some $23,000 into a custodial account for the benefit of his children. The trial court included in the marital estate the Clifford Trust, which benefits appellant's children but reverts to appellee, but did not include in the marital estate the $23,000 secretly transferred to appellee's custodial account for the benefit of his children.

■ It will be noted that as part of the division of marital property, the trial court awarded the 1984 Clifford Trust reverter to appellant and charged her with the face value of $10,145. This appears to us as being inequitable, and the actual value of the trust at the time of the judgment must be determined and charged against her.

The trial court awarded appellant no maintenance in the final decree and she received, as her share of the marital estate, her clothing, furniture, her car, the residue of the Clifford Trust, which she cannot receive until 1984, and the sum of $5,561 which the court ordered to be paid over a period of five years at the rate of $92.68 per month.

The court awarded the appellant $1,000 of the $4,000 attorneys' fees that were charged.

Four questions have been asked concerning this matter as follows:

    I.  Did the trial court properly assign the nonmarital property to each spouse?

    II.  Did the trial court properly divide the marital property and, if so, was the court correct in installment payments without interest?

    III.  Was appellant entitled to maintenance?

    IV.  Was the award of attorneys' fees to appellant proper?

This Court has handed down several decisions, including *Turley v. Turley*, Ky.App., 562 S.W.2d 665 (1978), and others, requiring tracing of premarital property.

■ As was stated in the concurring opinion in the above styled case at page 670, "The purpose of the classification of property as marital and nonmarital is to vacilitate restoration to each party of his property which was acquired outside the marriage and to divide that which was accumulated during the marriage."

It appears that the appellant had as premarital property furniture, $2,500 in savings and checking accounts, country club stock valued at $900, and her residence which sold for a net sum of $17,300.

■ Appellant testified that they sold her residence for a net sum of $17,300, and she endorsed the check to the appellee and does not know what he did with the proceeds. Appellee did not deny this on his first deposition, but only indicated that he didn't know how the money was spent; but at a later date stated he thought it was deposited in appellant's account and that she spent it. Appellee's accountant stated that in his opinion, the appellant had premarital assets in excess of $18,000. We believe, under the circumstances, it is incumbent on the appellee to furnish convincing evidence that the appellant received the $17,300 or otherwise it will be considered premarital property.

■ It was clearly erroneous not to award interest on deferred payments to appellant. See *Johnson v. Johnson*, Ky.App., 564 S.W.2d 221 (1978).

It is the contention of the appellant that maintenance should have been allowed, which is disputed by appellee. We believe the trial court should take another look at this matter, after having re-evaluated the entire case.

■ The court awarded the appellant $1,000 for her attorneys' fees which was one-fourth of the amount charged. We believe this was within the discretion of the court.

In *Wilhoit v. Wilhoit*, Ky., 521 S.W.2d 512 (1975), the Court was faced with the question of an allowance of attorneys' fees in an action for dissolution of marriage. The Court, in considering the question, stated at page 514:

If there has ever been any doubt regarding the discretionary authority of the trial court to allocate court costs and award an attorney's fee, KRS 403.220 laid that doubt to rest once and for all. As matters now stand, an allocation of the court costs and an award of attorney's fees are entirely within the discretion of the court.

We must point out that as a reviewing Court, we may not merely substitute our judgment for that of the lower court. The findings of a chancellor in a divorce case may not be disturbed unless they are clearly erroneous. CR 52.01; *Adams v. Adams*, Ky., 412 S.W.2d 857 (1967).

The judgment of the circuit court is affirmed in part, reversed in part and remanded with directions to make new findings of fact and to enter a new judgment consistent with this opinion.

All concur.