**Linda Dianne MOSS, Appellant,**

v.

**Thomas Dwayne MOSS, Appellee.**

Court of Appeals of Kentucky.

March 12, 1982.

Rehearing Denied May 7, 1982.

Earl T. Osborne, Osborne, Deatherage & Fletcher, Paducah, for appellant.

M. Greg Rains, McMurry & Livingston, Paducah, for appellee.

Before HAYES, C. J., and WHITE and HOGGE, JJ.

WHITE, Judge.

This appeal relates to the financial aspects of a dissolution of marriage action pursued in the Marshall Circuit Court. The issues raised for our consideration are:

1. Whether the child support, maintenance, and attorney's fees awards are insufficient and thereby constitute an abuse of judicial discretion, and

2. Whether the appellee-husband's pharmacy degree is marital property.

The parties have two children. By agreement the older, a son, now lives with his father and the younger, a daughter, with her mother. In addressing the amount of child support to be provided by appellee for his daughter, the Circuit Court held

> ... the Court knows of no reason why that child's needs are any greater or less than those of the male infant child whose custody was awarded to the petitioner; and the Court continues to believe that the allowance made for support of the child is consistent with the present ability of petitioner to assist in satisfying those needs.

KRS 403.210 establishes that child support, without regard to marital misconduct, is to be based upon the financial resources of the child, the custodial parent, and the noncustodial parent; the physical and emotional conditions of the child and his educational needs; and the standard of living the child would have continued to have enjoyed had the marriage not been dissolved. It is self-evident that in the absence of exigent circumstances all children of a marriage, for purposes of support, are to be considered equally.

It is this policy which the Court met in noting that the daughter's needs are neither greater nor lesser than those of the son; a monthly award of $100 was thereupon granted. We heartily endorse the Solomonesque approach to child support; however, we are unable to find a basis in the record for the proposition that one hundred ($100) dollars meets this charge.

Neither party presented to the lower Court detailed annualized estimates of the needs of the children. The most that is to be found is an itemization of the husband's expenses compiled for a four-month period shortly before the decree of dissolution was entered. Included therein was a listing of that expended during that time on behalf of his son by appellee. Reduced to a monthly figure, this amounted to approximately $260. We do not propose that this either would or would not be representative of the son's monthly needs over a greater length of time. Nevertheless, given the fact that this is the only information of record regarding same, we are compelled to take note of the extreme disparity between that offered for the son and that mandated for the daughter. It may well be that the lower Court believed that Mrs. Moss's own contribution to her daughter would balance out the difference; however, given her current financial status (as will be developed below) such contention is quite unlikely.

Upon remand the Circuit Court is directed to garner proof of each child's needs as well as those of his parents with the result that a more equitable award for the daughter's support be reached.

Regarding maintenance under KRS 403.-200 and *Chapman v. Chapman,* Ky., 498 S.W.2d 134 (1973), the Circuit Court is charged with two separate decisions:

1. does the claiming spouse have the right to maintenance and

2. if so, what is the correct amount?

For the determination of *right* fault has no bearing. The considerations as laid

down in KRS 403.200(1)(a) are economic, primarily whether at the termination of the marriage he or she is in a position to account for his/her own reasonable needs.

Once the right to maintenance is established, the *amount* is to be determined. In this aspect, and this aspect alone, fault may be considered. Under KRS 403.200(2) other relevant factors are the time necessary for education and training, the standard of living shared during the marriage, the duration of the marriage, and the ability of the other to pay.

At the time of the June 1967 marriage Mr. Moss was entering his second year of college; Mrs. Moss had completed the eleventh grade. In November 1980, one month prior to the entry of dissolution, Mr. Moss reported to the Court a gross weekly income of approximately $547. At that time Mrs. Moss had resumed her education, but prior to that she had earned through child care an average of $80–90 per week.

During the first years of the marriage as Mr. Moss continued his education and sporadically thereafter, Mrs. Moss had been employed in various minimum wage positions. She alleged that she was not employed throughout the full course of the marriage because Mr. Moss preferred his holding down two jobs rather than having his wife work. This was not denied; however, it was suggested that Mrs. Moss was offered the opportunity to build upon her education during the marriage but declined. Following the separation, towards preparation in a computer-related field, she enrolled at a community college and indicated that she planned to attend two years there before transferring elsewhere to complete a four-year program.

The marriage ended encumbered with debts. The only significant asset was the marital residence appraised at somewhat over sixty-four thousand ($64,000) dollars but which carried an indebtedness of approximately twenty-nine thousand ($29,000) dollars. The Court directed that the house be sold for satisfaction of the various obligations and that any excess be divided equally between the parties. Until a sale

could be effectuated, Mr. Moss was charged with continuation of the mortgage payments. From the record there is nothing to indicate that the house has yet been sold; therefore, we presume that the wife is still enjoying the benefits of living in the home in essence rent-free with the husband's meeting the $317.68 monthly mortgage.

The record contains references to marital indiscretions on the part of both appellant and appellee. In keeping with the spirit expressed by the Circuit Court we can fathom no benefit to anyone in detailing these experiences. In its initial Findings of Fact the lower Court held regarding maintenance:

> The Court is of the opinion, however, and even in the face of serious marital misconduct on the part of respondent which has undoubtedly contributed to the breakup of this marriage, she is entitled to some limited assistance in her attempts to secure formal training to better equip her to provide for her own maintenance and to assist with the maintenance of her child.

An award of one hundred and fifty ($150) dollars per month for eighteen (18) months was established.

Upon appellant's motion for additional findings of fact, the Court continued: "Suffice it to say that the evidence clearly shows misconduct on the part of both parties but that the conduct of respondent is the more flagrant if one cares to indulge in degrees of marital misconduct." And elsewhere:

> Nevertheless, the Court restates that the evidence shows, and the Judgment indicates, that the respondent during the course of the marriage possessed and used employment skills as a secretary-bookkeeper and as an employee of a day-care center for children, which skills are presumably still possessed by her. The Court awarded a maintenance allowance to respondent to the extent that the Court felt petitioner's capacity would allow, which will, at least, assist her in her efforts to acquire other training skills.

■ The primary thrust of maintenance is towards economic stability. Compensation is allowed to the claiming spouse for loss of marital support and maintenance which will allow him or her to become self-sufficient. *See Colley v. Colley,* Ky., 460 S.W.2d 821 (1970), and *Frost v. Frost,* Ky. App., 581 S.W.2d 582 (1979).

As noted *supra* KRS 403.200(2) outlines certain relevant factors to be considered by the Circuit Court. This list, however, is not exhaustive and has been supplemented through case interpretations to include additional factors such as fault. *See Chapman v. Chapman, supra.* The clear purpose is to preclude one whose misconduct led to the marital breakdown from continuing to retain the financial benefits of the union.

■ Maintenance is a matter delegated to the sound discretion of the Circuit Court. *Browning v. Browning,* Ky.App., 551 S.W.2d 823 (1977). In matters of such discretion barring a showing of absolute abuse, the confidence of the appellate courts is reposed in the trial judge. It is he who has followed the development of the case from its inception and who is charged with its most equitable resolution. Indeed, it has been said that it is he who comprises the heart, soul, and conscience of a marital dissolution. *Colley, supra* at 827.

■ We have been shown nothing in this appeal to indicate that the Circuit Court overstepped its discretion. It clearly considered factors such as Mrs. Moss's present ability to earn a livelihood, her desire to expand her education, Mr. Moss's ability to contribute to her support, as well as the existence of fault in causing the marriage to be terminated. In the light of such we cannot say that error was committed in the grant of $150 per month over a period of eighteen months.

On the matter of attorney fees, the Circuit Court in its initial Order directed that appellee remit seven hundred and fifty ($750) dollars plus costs towards Mrs. Moss's legal fees. Following motions for additional findings of fact and to reconsider the Court concluded:

It was the belief of the Court at the time the original fee was allowed to be taxed as costs and paid by petitioner, when considered with other costs that were taxed against petitioner, that the allowance made for the wife's attorney was adequate. The Court continues to be of that belief except that the allowance of the fee *should be increased* to the extent of out-of-pocket expenses incurred by counsel for respondent in the amount of $677.17 which are now allowed to be taxed as costs and paid *by respondent* in addition to the original fee fixed by the Court. (Emphasis added.)

Appellant now argues that the Court abused its discretion in reducing rather than raising the fees to be paid on behalf of respondent. It is her counsel's interpretation that this latter award changed the permissible fee down from $750 to $677.17. It is evident to this Court that this was not the intent of the lower Court. Clearly a mistake was made in requiring payment "by respondent." In conformity with the initial Order to which this refers, certainly it should have read either "by *petitioner*" or "*to* respondent." The result would have been a total award of $1,427.17 plus costs.

Nevertheless, appellant did not bring this to the Circuit Court's attention through a CR 60 motion. Instead, the issue has been raised before us as one of abuse of discretion.

■ It is evident from the record that neither party has left the marriage in a strongly solvent position. The Court in its Order made clear that it felt that financial considerations precluded increasing the award any more than to cover appellant's counsel's out-of-pocket expenses. This was followed by the apparently mistaken entry which in effect adjusted the award downward. Even barring this, we are unable to state that the award, whether $750, $677.17, or $1,427.17, was erroneous given the liberal discretion with which the Circuit Court is imbued. The determination of attorney fees and court costs is a matter delegated entirely to the discretion of the Circuit Court; there is nothing mandatory about it.

KRS 403.220, *Wilhoit v. Wilhoit,* Ky., 521 S.W.2d 512 (1975), and *Browning v. Browning, supra.*

■ Appellant's final argument asserts that Mr. Moss's degree to practice pharmacy is marital property and is to be divided equitably. We agree; however, we need make clear initially that our remarks are limited in effect to the acquisition of the pharmacy degree and not the subsequently issued license. We make this distinction because appellant herself is unclear as to what is being sought. Although her conclusion speaks directly to the need to divide the pharmacy degree, much of her argument and the testimony of her expert witness are addressed to the value of a license to practice pharmacy.

The two are not the same. A degree may be a marital investment, one which is subject to cost basis analysis. A license, however, is an illusory asset, one which represents merely a potential for increased earnings. The license is no more and no less than the authorized right to engage in the profession selected. To say the license has no value obviously would be wrong, but it is just as obvious that such value is only *intrinsic* and *intangible* and not equatable with dollar amounts as are things of *extrinsic* and *tangible* value.

In addition to (and often used interchangeably with) the degree and the license, there is the actual "practice" itself. This is the day-to-day pursuit of the chosen vocation from which the income or financial benefit is in reality derived. A practice is an evolving process. It may or may not materialize into some definite status of value. At best it is no more than a futuristic hope. Prospectively it is never an absolute or a certainty. Retrospectively it is reflected in accumulation of property and standard of living, always subject to consideration and division.

In addition, the greatest deterrent to allotting or assigning value to a futuristic potential is that death or total disability terminates automatically and instantly any possibility of that potential. Also, the right of recovery in and to marital property is based upon the theory of contribution. How can it be said that either spouse could contribute to a potential in the other which is not yet and may never be realized? Especially is this true following a divorce or dissolution when the opportunity for such contribution is cut off and ceases to exist.

Again, practice depends largely upon a number of personal characteristics which will always vary in different people. Those characteristics include the ability to establish rapport, confidence, assurance, concern for well-being, and goodwill. Yet in each and every one of these characteristics there is that unknown factor which may enhance the potential or, conversely, the lack of which will contribute little or nothing to the potential.

Although studies have been propounded by which this potential is to be measured, as yet we find such too speculative and general for our reliance. By necessity such evaluations are based upon factors such as means and norms. The result may well inform us of what Mr. Average Pharmacist may expect to draw from his practice, but it sheds insufficient guidance upon what Mr. Moss will receive.

A licensed pharmacist does indeed have an income opportunity not available to others in the work force. This potential may be nurtured and brought into reality, or it may be set aside in favor of an entirely separate and perhaps less lucrative endeavor. To premise a property settlement upon such unpredictable potential is faulty in at least two ways.

First, it would bind Mr. Moss to earn at least that of the average pharmacist. Were he to fall into the below-average category, Mrs. Moss would have the benefit of something which never existed, and Mr. Moss would be penalized. Secondly, it would bind Mr. Moss to the occupation. If in coming years he should prefer to pursue drama, mechanics, or farming full-time, are his options to be restricted because a court has financially strapped him to his potential in pharmacy?

The only absolute in this consideration is the cost of the degree itself. In dealing with the issue of marital property *Cooke v. Cooke,* Ky., 449 S.W.2d 216 (1969), held that if property is accumulated by virtue of the joint efforts of the parties during the marriage, each has a vested "ownership" interest therein. KRS 403.190(3) in 1972 extended this to declare:

All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually .... The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

The record before us indicates that each party contributed to the marital account during the time that Mr. Moss was in school. The lower Court found that Mrs. Moss had not established what part of her income had been directed to appellee's education; however, we hold that to be irrelevant. The fact is that a significant source of the money was from within the marital relationship itself.

The lower Court also credited Mr. Moss with having provided towards his education through scholarships and loans. We do not question that academic scholarships are too closely related to the individual to be considered anything other than nonmarital property; however, loans fall into a different category. Although the purpose of the loans was for appellee's education, partial repayment thereof came from the marriage, not from the individual. Upon dissolution the outstanding amount was assigned as a debt to Mr. Moss, and to this extent such portion of the loans upon remand is to be classified as nonmarital. The balance, nevertheless, must be attributed to the marriage and is therefore to be considered as part of the marital investment.

Under our holding Mrs. Moss is entitled to a return on her portion of the marital contribution to the cost of Mr. Moss's education. This division in no way reaches the license and the dividends it may carry in the future. Mrs. Moss reaped whatever benefits Mr. Moss's education brought during the course of their marriage. Primarily from his employment they were able to purchase items such as a home and furnishings; these were allocated between them upon dissolution. Upon remand Mrs. Moss's interest is to be restricted to recouping her portion of the education investment. The extent of the return upon this investment is to be "the amount spent for direct support and school expenses during the period of education, plus reasonable interest and adjustments for inflation." *Inman v. Inman,* Ky.App., 578 S.W.2d 266, 269 (1979).

For all the aforementioned reasoning the Order of the Marshall Circuit Court is reversed and remanded with instructions to reconsider in conformity with this opinion the portions dealing with child support and division of the investment in the pharmacy degree.

All concur.