Joseph FITCH, Appellant,

v.

Thomas R. BURNS and Ada C. Burns, Appellees.

No. 88–SC–891–DG.

Supreme Court of Kentucky.

Nov. 30, 1989.

Rehearing Denied Feb. 8, 1990.

David A. Nunery, Megan Lake Thornton, McBrayer, McGinnis, Leslie & Kirkland, Lexington, for appellant.

Natalie S. Wilson, Linda W. Covington, Lexington, for appellees.

LEIBSON, Justice.

This action was filed in Rowan Circuit Court by Thomas and Ada Burns, seeking custody of their maternal grandchildren, Katherine and David Fitch. Their daughter, Susan Fitch, was killed when, during a domestic confrontation, she threw herself on the hood of the car to prevent her husband, Joseph Fitch, from driving off with one of the children. He drove off operating the motor vehicle so as to dislodge her from the car, and caused her death. Joseph Fitch was subsequently charged and pled guilty to second-degree manslaughter because of this incident. He was sentenced to five years, probated.

The marital residence of Joe and Susan Fitch, and the "permanent residence" (the "domicile") of both parents and the children, was in Lexington, Kentucky, where this tragic event occurred. *See* "residence" and "domicile" as defined in *Black's Law Dictionary*, 5th ed., 1979. Within hours of the occurrence, and with their father's permission, the maternal grandparents took the children from Lexington to Morehead in Rowan County, where the Burns' resided. A few days thereafter the father sought without success to make arrangements by telephone to visit the children. He then went to Morehead to arrange for the return of his children. He was told by Thomas Burns that he could not have the children, or even see the children unless a court ordered it. Three days after this meeting and twelve days after the children had been taken from Fayette County, the Burns' filed this Petition seeking permanent custody of these children in Rowan Circuit Court, in which they acknowledged Joseph Fitch was the father and served notice of their action.

By a pleading designating a "Special Appearance" the father moved to "Dismiss for Improper Venue," challenging the grandparents' right to proceed in Rowan County under KRS 403.420(4), which states in pertinent part that a child custody proceeding may be commenced:

"(b) by a person other than a parent, by filing a petition for custody of the child in the County in which he is *permanently resident or found*, but only if he is not in the physical custody of one of his parents." (Emphasis added).

His Motion to Dismiss for Improper Venue was overruled. Thus the threshold question in this litigation is whether, in the circumstances presented, the grandparents had the right to commence this action in the county of their residence, or whether they were required instead to file this ac-

tion in Fayette Circuit Court, where the children "permanently" resided until twelve days before the Petition was filed. The Court of Appeals affirmed the decision of Rowan Circuit Court upholding venue under the statute. We have accepted discretionary review, and reverse.

KRS 405.020(1) provides "[t]he father and mother shall have the joint custody ... of their children," and "[i]f either ... dies, the survivor, if suited to the trust, shall have the custody." "This [parental] right may only be abrogated in an action involving a nonparent seeking custody by a showing of unfitness sufficient to support an involuntary termination of parental rights." *Boatwright v. Walker*, Ky.App., 715 S.W.2d 237, 244 (1986). *See also Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989), and cases cited therein.

There is no question but that Fayette County was the children's permanent residence and their only residence before their mother was killed, and that the father's permission extended only to possession for a visit with the maternal grandparents. The permission granted terminated when the surviving parent asked for their return.

The maternal grandparents do not argue that their possession changes the residence of the children or that such possession, per se, affects the legal status of the father's custody rights. They argue only that the statute fixes venue in two places, not just where the children are "permanently resident" but also where they may be "found," and that these children could be "found" in Rowan County when this action was filed, albeit only because they were transported there by their grandparents.

■ Thus the threshold question before the trial court, and before this Court on discretionary review, is whether the venue statute permitted this action to be filed in Rowan Circuit Court. More narrowly, the question is whether the words in the statute, "or found," cover the present situation. The Burns' counsel conceded that the phrase, "or found," would not be coextensive with being physically present if the children had been brought to Rowan County without permission. Their attorney acknowledged that she participated in what would be the controlling case in such circumstances, *Simpson v. Simpson*, Ky., 586 S.W.2d 33 (1979), wherein we stated:

"A nonparent cannot legitimately invoke the Court's jurisdiction on the issue of custody by seizing a child from a parent prior to filing a petition for custody." 586 S.W.2d at 35, n. 1.

Thus, a nonparent cannot create venue by taking a child from one county to another without permission, even though after the child has been so taken he may then be "found" in the latter county. The question then remains whether the fact that the children were taken with permission, but only for a visit, is a significant difference triggering venue in the county to which the children were taken: venue which was not divested when permission was withdrawn.

The word "found" is the past tense and past participle of the verb "to find." "To find" and "to take" are not synonyms, but antonyms. "To find" means "to come upon" either "accidentally" or "by search or effort." *Webster's Ninth New Collegiate Dictionary*, 1983. The only logical interpretation of the phrase "or found" when used as an additional location for venue, as provided in KRS 403.420(4)(a), is to provide the person seeking custody a right to bring an action wherever he succeeds in finding or locating his children. Surely the purpose of the statute is not to permit forum shopping; not to permit a party gaining temporary possession of the child, either with or without permission of the parent, to take the child to a favorable forum to initiate custody proceedings. Logically the purpose is to accommodate the parent, or other person then vested with legal custody, who has succeeded in locating his child, by permitting that person to take legal action in the place where his child is physically present.

We do not suggest that the results on the merits of the custody issue in this case would be any different in a different forum. But this was clearly a Fayette County case unless the father chose otherwise. The venue statute did not grant to the

maternal grandparents a window for redress in Rowan County.

The issue here does not concern jurisdiction, but venue. Nevertheless, the Uniform Child Custody Jurisdiction Act, KRS 403.400 *et seq.*, sheds light by analogy on the present problem by reason of certain policy considerations stated therein. We refer, in particular, to the "general purposes," as itemized in KRS 403.400(1), which include, *inter alia:* to "[a]void jurisdictional competition" and "the shifting of children from state to state with harmful effects on their well-being;" to promote rendering "a custody decree" in the forum "which can best decide the case in the interest of the child;" and to "[a]ssure that litigation concerning the custody of a child takes place" where "the child and family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available."

■ We caution lest the present decision be too broadly applied. One important consideration here was that the father asked for return of the children within a matter of days, and this action seeking to change custody was initiated only twelve days after the children had been removed to Rowan County. We do not decide as a hard and fast rule that a parent can engage in lengthy delay in asserting his custodial rights without at some point losing the right to complain that the county of their new location has venue to consider their custody. Obviously, at some point the children should be considered resident of the new county. This issue, like other questions of domicile, is a factual one to be decided with due regard to all the factors involved. We decide only that the words "or found" do not per se extend venue to wherever within the state the children may be transported, regardless of whether their initial removal was with or without consent of a custodial parent.

, Because we anticipate some likelihood that the custody issue will be further litigated in Fayette County, we deem it advisable to comment upon two additional issues which we were asked to address on this discretionary review.

■ First, the movant asks us to address a substantial amount of hearsay evidence that the trial court admitted by applying a so-called residual exception to the hearsay rule. Recognizing that KRS 405.020 entitled the father, Joseph Fitch, to custody of the children unless proved not "suited to the trust" (KRS 405.020(1)), the grandparents sought to carry this burden, at least in part, with testimony from ten witnesses, mostly friends and relatives of the deceased mother, as to statements she made to them before her death tending to show that Joseph Fitch was violent and abusive toward her during their marriage.

While we recognize that litigants are often frustrated by the limitations of the hearsay rule, we also recognize the important purpose that it serves. We continue to adhere to the fundamental premise that the Rules of Evidence provide a minimum guarantee of trustworthiness essential to the just determination of causes. This means that hearsay evidence is not admissible unless it falls within a recognized exception to the hearsay rule. Contrary to the statement in Appellees' Brief, the fact that the party offering it deems such evidence " 'crucial' or 'devastating' along with being reliable," does not make it admissible, even if the trial judge agrees.

In our view this case would not fall within the catchall residual exception to the hearsay rule provided in Federal Rules of Evidence 803(24) and its companion provision in Rule 804(b)(5), either substantively or procedurally. But more to the point, as the appellees' counsel acknowledges in her Brief, "[t]he Kentucky Supreme Court has declined, twice in the last two years, to adopt the residual exception to the hearsay rule." *Estes v. Commonwealth*, Ky., 744 S.W.2d 421 (1987); *Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988). We state once more that we do not intend to add the residual hearsay rule to the many hearsay exceptions already recognized in the courts of this Commonwealth. If the Burns' should elect to refile this action, we instruct the trial court to limit its consider-

ation to evidence admissible under the decisions of this Court and the laws of the Commonwealth.

■ Finally, the appellant has questioned whether the trial court properly applied the appropriate standard in divesting the father, the natural parent, of custody of his children. The question is whether the "clear and convincing evidence" standard applies to the present fact situation. If there was previously any doubt about this matter, it is resolved by *Davis v. Collinsworth, supra.* In *Davis,* a custody dispute between the natural mother and the paternal grandmother, we stated:

> "The United States Supreme Court has recognized that *parents* have fundamental, basic and constitutionally protected rights to raise their own children and that any attack by third persons (and we would include grandparents in that category) seeking to abrogate that right must show unfitness by 'clear and convincing evidence.' *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)." 771 S.W.2d at 330. (Emphasis original).

There was considerable discussion in the court below on what standard of proof the court should apply in weighing the evidence against the father, clear and convincing evidence or a preponderance of the evidence. It is difficult to determine from the record just how the court ultimately resolved the issue. The final Order does not specify the standard applied in weighing the evidence, and there are some statements in the record suggesting that the wrong standard could have been applied. For instance, at one point the court stated that what it was "seeking here is the suitability of the father or the suitability of the grandparents," which arguably suggests inappropriate use of the preponderance of evidence standard when the situation calls for application of the clear and convincing evidence standard.

We need not resolve this question, because this case is being reversed with directions to dismiss on procedural grounds involving the question of venue. Nevertheless, in the event of a new petition for custody brought in the appropriate court, we instruct the trial judge to weigh the proof against the father using the clear and convincing evidence standard.

Because there is no recent Kentucky case attempting to define precisely what this means, we turn to *McCormick on Evidence,* 2nd ed., p. 796, Sec. 340(b) (1972), a textbook discussion of "satisfying the burden of persuasion" where there is a "requirement of clear and convincing proof." *McCormick* states that the "phrasing within most jurisdictions has not become as standardized as is the 'preponderance' formula," and that "no high degree of precision can be obtained by these groups of adjectives." He concludes that the best formulation of the various terms that have been used to express this concept is that the trier of fact "must be persuaded that the truth of the contention is 'highly probable.' " *Id.*

■ We conclude that where the "burden of persuasion" requires proof by clear and convincing evidence, the concept relates more than anything else to an attitude or approach to weighing the evidence, rather than to a legal formula that can be precisely defined in words. Like "proof beyond a reasonable doubt," "proof by clear and convincing evidence" is incapable of a definition any more detailed or precise than the words involved. It suffices to say that this approach requires the party with the burden of proof to produce evidence substantially more persuasive than a preponderance of evidence, but not beyond a reasonable doubt.

The decision of the Court of Appeals is reversed. The judgment of the trial court is vacated, and the within case is remanded to the trial court with directions to dismiss the Petition for Custody for lack of venue.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur.

GANT, J., dissents by separate opinion in which VANCE and WINTERSHEIMER, JJ., join.

VANCE, J., dissents by separate opinion in which GANT and WINTERSHEIMER, JJ., join.

GANT, Justice, dissenting.

Respectfully, I dissent. The trial court did not err in denying movant's Motion to Dismiss for Improper Venue. KRS 403.-420(4) establishes the proper venue for a custody proceeding. When said proceeding is initiated by a parent, the proper venue is "the county in which he [the child] is permanently resident or found." KRS 403.-420(4)(a).

Identical language governs venue when the proceeding is initiated by a non-parent who has physical custody of the child. KRS 403.420(4)(b). The statute makes no distinction based upon the identity of the petitioner, and for this court to do so would exceed our authority.

The majority rests its decision upon its conclusion that the children were only temporarily entrusted to the Burnses. The evidence on that fact is conflicting, and there is considerable evidence to the contrary. Furthermore, the trial court made no fact finding on that issue. The record does reveal, however, that the Burnses filed their petition for both permanent and temporary custody on November 18, 1986. On November 21, 1986, they filed another petition for temporary custody in which they stated their fear for their grandchildren's safety if they were returned to their father.

Fitch requested return of the children after he was indicted in their mother's death. On December 9, 1986, he filed a petition for immediate possession.[1] This petition was denied by the trial court, and temporary custody was awarded to the Burnses, in whose custody the children have remained pursuant to the orders of the court. Despite the fact that Fitch wanted the children returned to him, the Burnses' possession of them was not wrongful.

The majority implies that the result on the merits might be no different in Fayette County. However, if the case is dismissed and the children returned to their father, there will be no decision on the merits. KRS 403.420(4)(b) grants standing to a non-parent only if the non-parent has physical possession of the child. Furthermore, because the children have, pursuant to court order, resided in Rowan County for three years (most of their lives) the vast majority of evidence regarding their well-being is now found in Rowan County. Fayette County is arguably as inconvenient a forum at this point as Rowan County may have been three years ago.

After removing from consideration that evidence admitted under the residual exception to the hearsay rule, there remains ample evidence in the record to support the trial court's findings that: the personal characteristics demonstrated by Fitch in his public life did not extend to his personal life and family relations; Fitch physically abused his wife and his lack of self-control was demonstrated in the circumstances of her death; Fitch was a man who erupted into violent behavior when he was angry or frustrated; Fitch suffered from a personality disorder which contributed to the instability of his interpersonal relations, and the risk of injury from his inappropriate behavior was greatest for those with whom he was intimate and those who were defenseless, including young children. Furthermore, Fitch pleaded guilty to second-degree manslaughter, thereby admitting that he had wantonly caused the death of the children's mother.

The trial court was without the benefit of *Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989), which states that for a non-parent to prevail over a parent in a custody proceeding, the unfitness of the parent must be proved by clear and convincing evidence and which delineates the factors to be considered by the court. Regardless of that

---

1. Contrary to the majority opinion's explanation that the purpose of the words "or found" in KRS 403.420(4)(a) and (b) is to accommodate "the parent, or other person then vested with legal custody," a person having legal custody does not file a petition for custody under this statute— they already have custody. Their proper remedy is to file a motion for immediate possession of the children.

624

fact, the trial court's findings and the evidence in the record support its conclusion that Joe Fitch was not a fit parent. Because Fitch was not fit to have custody and because the Burnses were found to be suitable custodians, the trial court properly awarded custody of these children to the Burnses.

VANCE and WINTERSHEIMER, JJ., join in this dissent.

VANCE, Justice, dissenting.

Respectfully, I dissent. K.R.S. 403.-420(4)(b) provides that a child custody proceeding is commenced in the circuit court "by a person other than a parent by filing a petition for custody of the child in the county in which he is permanently resident *or found*, but only if he is not in the physical custody of one (1) of his parents." (Emphasis added.)

Admittedly, a person who kidnaps or snatches a child from one having legal custody and takes the child into another state or another county of this state for the purpose of filing a custody proceeding will be estopped from doing so. There was no such child snatching in this case, however. The father of the children had been indicted for homicide for causing the death of his wife, the mother of the children, and under the circumstances he suggested to the appellee grandparents that they take the children to reside with them in Rowan County. The length of time that the children were to reside with the grandparents was not discussed at that time insofar as this record shows.

The grandparents believed that the father had a violent temper and disposition and were concerned for the safety of the children should they be returned to the custody of the father. When the father sought to regain possession of the children, the grandparents filed a proceeding in Rowan County, the county in which the children were then located, seeking custody of the children.

The majority now holds that Rowan Circuit Court could not entertain the action by limiting the words "or found" in the statute to permit an action in the county where the children are found only by a parent seeking to recover custody of children when they have been found in another county. This, in my view, is an improper limitation, and one which flies in the very face of the statute.

It defies logic to limit the right to sue where the children are "found" to a parent when the statute itself specifically grants this right to a nonparent. We must concede that the words "or found," as used in the statute have some meaning, and if they do not apply to a nonparent, they are entirely superfluous and have no meaning at all. It seems to me that the majority has simply decided that the legislature used bad judgment when it allowed a nonparent to file a custody proceeding in either of two locations, (1) the county of the children's residence, or (2) the county where the children happened to be located. By this decision this court has simply amended the statute to strike out the words "or found," and in my view, it is beyond our prerogative to legislate in this manner.

Children are wards of the court, and the courts have a duty to protect children from harm. The court in the county in which children permanently reside has jurisdiction to enter protective orders and decide custody matters, but on occasions when children are legitimately in a county other than the county of their permanent residence, they become wards of the court of that county as well, and that court also has a duty to protect them.

I believe that the statute in question authorizes the court of a county in which children are then located to conduct a custody proceeding on the petition of both a parent or a nonparent who has standing to seek custody. Of course, a nonparent has no right to custody against a parent unless he can show that the parent is unfit for custody.

Here, grandparents seek custody on the ground that the safety of the children is endangered when in the custody of the father and that the father is not a fit person to be entrusted with the custody of the children. I believe they have the right

under the statute to assert their claim in Rowan County, not because it is the residence of the grandparents, but because it is the county in which the children are "now found."

The fact that the father attempted to revoke permission for the children to remain in Rowan County is irrelevant. The grandparents removed the children to Rowan County legally and with the father's permission. Their continued possession of the children is not illegal, even though permission was revoked, as long as they are attempting to assert in court a good-faith claim that custody should be granted to them to protect the children from serious harm.

GANT and WINTERSHEIMER, JJ., join in this dissenting opinion.