**Agnes D. UNDERWOOD; and J. Michael Smither and David L. Vish, Her Attorneys, Appellants/Cross–Appellees,**

v.

**John Thomas UNDERWOOD III, Appellee/Cross–Appellant.**

**Nos. 90–CA–002791–MR (Direct), 91–CA–000069–MR (Cross).**

Court of Appeals of Kentucky.

July 3, 1992.

Rehearing Denied Sept. 4, 1992.

---

James Michael Smither, David L. Vish, Louisville, for appellants/cross-appellees.

Diana E. Wheeler, James L. Theiss, Williamson, Simpson, Combs & Theiss, LaGrange, for appellee/cross-appellant.

Before EMBERTON, HUDDLESTON and STUMBO, JJ.

HUDDLESTON, Judge.

Agnes D. Underwood appeals from an Oldham Circuit Court order finalizing the dissolution of her marriage to John Thomas Underwood. Agnes claims that the court erred in the division of marital property and in awarding maintenance. Her attorneys challenge the sufficiency of the fees awarded them by the court. Tom cross-appeals, claiming that the court erred in its valuation of certain property and in ordering him to pay one-half of Agnes' medical expenses subsequent to the parties' separation; but prior to the dissolution of their marriage.

Initially, Agnes argues that the trial court erred in finding that a portion of the insurance agency owned by the parties is non-marital property not subject to division under KRS 403.190. In 1977, Tom purchased his father's insurance agency for $75,000.00. Ten years later, Tom and his father amended the sales contract to provide for the forgiveness of the balance of the debt at the rate of $10,000.00 per year.

Tom claims that the language of the amended contract supports his assertion that his father forgave the debt as a gift to him and, accordingly, that that specific portion of the sales price of the agency should be considered non-marital property. Tom specifically points to the second paragraph of the contract which provides that "in consideration of the love and affection which the Seller has for the Buyer, who is his son, the Seller wishes to amend the Contract of Sale to forgive the outstanding indebtedness remaining thereon over a term of years."

According to KRS 403.190(3), "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property...." This presumption may be rebutted by clear and convincing proof that the property was acquired by, amongst other means, "gift, bequest, devise, or descent." KRS 403.190(2)(a); KRS 403.190(3); *Browning v. Browning*, Ky.App., 551 S.W.2d 823, 825 (1977).[1]

---

1. The "clear and convincing evidence" standard, as used in this context, apparently originated with the *Browning* case and has since been cited in numerous opinions of this Court. See *Munday v. Munday*, Ky.App., 584 S.W.2d 596, 598 (1979); *Adams v. Adams*, Ky.App., 565 S.W.2d 169, 171 (1978). It seems this standard was created by the Court because KRS 403.190(3) does not specify the quantum of evidence required to rebut the presumption that property acquired after marriage and before separation is marital property. Although we recognize that

This Court has said on numerous occasions that the donor's intent is the primary

this standard has been applied in Kentucky for quite some time, we question its validity.

The Kentucky Supreme Court recently defined the "clear and convincing evidence" standard in *Fitch v. Burns*, Ky., 782 S.W.2d 618, 622 (1990). *Fitch* involved grandparents who were seeking custody of their three grandchildren. The Court held that in order to abrogate the parents' fundamental right to raise their children, the grandparents must show the parents' unfitness by "clear and convincing evidence." In defining precisely what the phrase "clear and convincing evidence" means, the Court said:

> We conclude that where the 'burden of persuasion' requires proof by clear and convincing evidence, the concept relates more than anything else to an attitude or approach to weighing the evidence, rather than to a legal formula that can be precisely defined in words. Like 'proof beyond a reasonable doubt,' 'proof by clear and convincing evidence' is incapable of a definition any more detailed or precise than the words involved. It suffices to say that this approach requires the party with the burden of proof to produce evidence substantially more persuasive than a preponderance of evidence, but not beyond a reasonable doubt.

*Id.*

We are unable to see why the division of property in a dissolution of marriage proceeding warrants such a high standard of proof, arising to the same level of importance as the termination of parental rights. Surely the most important issue in any divorce case is the custody of children; yet, we do not require a party to show by clear and convincing evidence that living with that individual would be in the child's best interest. It seems unreasonable then to require a party to rebut the presumption that property is marital by producing clear and convincing evidence.

One of the new Kentucky Rules of Evidence, KRS 422A.0301 (KRE 301), effective July 1, 1992, describes how presumptions in civil actions work:

> **Presumptions in general in civil actions and proceedings.**—In all civil actions and proceedings when not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Nearly sixty years ago, Kentucky's highest court clearly explained the effect of a presumption:

> [A] presumption is an artificial thing, a mere house of cards, which one moment stands with sufficient force to determine an issue, but at the next, by reason of the *slightest rebutting evidence*, topples utterly out of consideration of the trier of facts. (Emphasis supplied.)

factor in determining whether a transfer of property is a gift. See *Clark v. Clark, Prudential Ins. Co. v. Tuggle's Adm'r.*, 254 Ky. 814, 72 S.W.2d 440, 443 (1934).

Professor Lawson, in the *Kentucky Evidence Law Handbook*, § 10.00 (2d ed. 1984), notes that Kentucky courts have had difficulty in determining the standard by which evidence offered to rebut a presumption is to be measured. He observes that past cases "convey[ ] an impression that the burden of going forward with evidence, if allocated to a litigant through application of a presumption, is more harsh than under ordinary circumstances." *Id.* at 325.

This confusion still remains. In *Bartlett v. Commonwealth*, Ky., 705 S.W.2d 470 (1986), the Court, quoting *Simmons v. Simmons*, Ky., 479 S.W.2d 585, 587 (1972), stated that the presumption of legitimacy of a child born during wedlock can be rebutted "only by evidence so clear, distinct and convincing as to remove the question from the realm of reasonable doubt." *Id.* at 472.

Lawson quotes two statements from Kentucky cases that, in his view, describe "the standard by which a trial court should determine if the initial impact of a presumption has been overcome...." *Lawson* at 325:

> Assuming that a rebuttable presumption has been created, entitling [the plaintiffs] to a directed verdict unless reduced to a less persuasive status, the question is whether the defensive evidence injected *enough doubt that it would not have been reasonable for a jury to remain unconvinced....* (Emphasis in original.)

*Scott v. Patterson*, Ky., 400 S.W.2d 526, 530 (1966).

> The countervailing defensive evidence need not be 'substantial' in that it would support a positive conclusion that the work was not a contributing cause; it need only cast enough doubt on the validity of the initial presumption in the case at hand to justify a reasonable man in disregarding it.... It must, however, when considered together with all the other evidence in the case, have enough substance to satisfy the 'reasonable man' test as it has been expressed here and in various precedents....

*Workman v. Wesley Manor Methodist Home*, Ky., 462 S.W.2d 898, 900–901 (1971).

If applied to the presumption established by KRS 403.190(3), the "reasonable man" standard would require only that amount of evidence which, in the mind of the fact finder, would cause a reasonable person to justifiably disregard the presumption that the property in question is marital property.

In this case, we do not believe the amended contract creates enough doubt as to the validity of the "marital property" presumption to permit a reasonable fact finder to justifiably disregard it. Even though we believe that requiring "clear and convincing evidence" to rebut the "marital property" presumption is improper, the "reasonable man" standard would not have created a different result in this case.

Ky.App., 782 S.W.2d 56, 63 (1990); *O'Neill v. O'Neill,* Ky.App., 600 S.W.2d 493, 495 (1980). In addition, decisions of the Supreme Court require that a contract "be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland,* Ky., 705 S.W.2d 916, 919 (1986).

■ Although we agree that a debt may be the subject of a gift by a creditor to his debtor, *Ratliff v. Ratliff,* 283 Ky. 418, 141 S.W.2d 566, 568 (1940), upon examination of the entire contract, we do not believe that the debt in this case was forgiven out of disinterested generosity. Although the contract states that the debt was forgiven "in consideration of the love and affection" which Tom's father has for his son, a later paragraph states that "in consideration [for the forgiveness of the debt, Tom] promises to continue to employ [his father] at a salary to be mutually agreed upon between them to advise and assist in the orderly operation of the insurance business." As the *City of Louisa* Court stated, "[t]he legal interpretation of a contract should be made in such a way as to make the promises mutually binding on all parties unless such a construction is wholly negated by the language used." *Louisa* at 919.

We believe the only logical interpretation of the amended contract is that the parties' mutual promises were supported by consideration and were not given gratuitously. Consequently, we hold that the trial court clearly erred when it excluded a portion of the insurance agency from marital property. *Ghali v. Ghali,* Ky.App., 596 S.W.2d 31, 32 (1980).

■ Agnes also challenges the trial court's valuation of the insurance agency. Expert testimony regarding the value of the agency was offered by both parties. Agnes' expert testified that the most frequently used valuation method involves multiplying 1.5 times the gross annual income of the agency. The agency's gross commissions for the previous six years were as follows:

| Year | Amount |
|------|--------|
| 1988 | $266,481.00 |
| 1987 | 180,177.00 |
| 1986 | 186,443.00 |
| 1985 | 155,200.00 |
| 1984 | 121,012.00 |
| 1983 | 143,664.00 |

Applying the above method to the gross commissions for 1988 (and apparently making a minor adjustment), Agnes' expert arrived at a value of $399,602.80. Tom's expert used the same method but reduced the figure by taking into account the agency's limited transferability, the account characteristics and excess expenses due to Tom's extensive business travel. He arrived at a figure of $93,100.00.

The court ultimately valued the agency at $200,000.00, a sum which Agnes claims is inconsistent with the method of valuation adopted by the court. Upon a request for findings on the method used, the court supplied the following:

[T]he Court was impressed by that aspect of the business that indicated it was purchased in 1978 for an amount of $75,000.00. In addition, although there were experts that were called concerning the valuation of this insurance business, the Court indicated it was somewhat unique and would not take a figure of 1.5 times the gross commission in the last year of operation.

The Court was inclined to believe that during the development of the insurance agency, there is recognized a gradual growth in increase of the business. Therefore, the Court was inclined to believe that if the 1.5 was to be applied to the gross commissions that it would be on a weighted formula whereby the most recent year's commission would not be the sole criteria, but there would be some consideration given to the gradual increase over the last two or three years. It is also recognized by the Court that indeed the commissions earned in at least one of those years from one client was a fairly substantial commission which is reflected in the record.

■ From these findings, it appears that the trial court considered factors other

than those utilized by the experts in valuing the insurance business. Although not calculated with mathematical exactitude, the court's figure clearly falls within the range of competent testimony. A trial court's valuation in a divorce action will not be disturbed on appeal unless it is clearly contrary to the weight of the evidence, *Heller v. Heller*, Ky.App., 672 S.W.2d 945, 947 (1984); and in this case we cannot conclude that it was. CR 52.01; *Roberts v. Roberts*, Ky.App., 587 S.W.2d 281, 283 (1979).

 Agnes also contends that the court's award of maintenance at the rate of $1,350.00 per month was inadequate. The trial court found Tom's income to be $46,-000.00 per year. In addition to the $1,350.00 per month, or $16,200.00 per year, in maintenance, the court ordered Tom to carry medical insurance on Agnes through age 60 at a cost of $400.00 per month, or $4,800.00 per year. Also, testimony at trial indicated that Agnes could earn approximately $11,000.00 to $12,-000.00 per year as an artist.

Considering that Agnes received approximately $132,000.00 equity in the marital home, all of the parties' furniture, an interest in two pension plans, life insurance policies, her car, an interest in the insurance agency totaling approximately $28,-000.00 (which will increase as a result of our decision), and one-half of an account totaling approximately $15,000.00, we are unable to find that the trial court abused its discretion in awarding her $1,350.00 per month, as well as the cost of providing medical insurance.

Agnes' attorneys argue that the trial court abused its discretion in awarding but $5,000.00 in fees in light of the extreme disparity in the parties' financial resources.

KRS 403.220 provides:

**Costs of Action and Attorney's fees.—** The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

 The allocation of attorney's fees is entirely within the discretion of the court and is not mandatory. *Moss v. Moss*, Ky. App., 639 S.W.2d 370, 373 (1982); *Wilhoit v. Wilhoit*, Ky., 521 S.W.2d 512, 514 (1975). In addition to $5,000.00 for attorney's fees, the court awarded Agnes $3,500.00 for costs incurred in hiring expert witnesses. Furthermore, Agnes' attorney's fees totaling $17,000.00 are based on the cost of employing two attorneys. Considering this and the amount of property Agnes was awarded at trial, we do not believe that the parties' financial resources are such that the trial court abused its discretion.

 In his cross-appeal, Tom cites as error the trial court's valuation of certain real estate owned by the parties. We cannot set aside a trial court's findings on questions of fact unless they are clearly erroneous, CR 52.01; *Reichle v. Reichle*, Ky., 719 S.W.2d 442, 444 (1986); and because there was expert testimony presented that supports the trial court's findings, we do not believe they were.

 Tom also argues that the court erred in finding that he failed to prove a non-marital interest in these parties' residence. Tom testified at trial that $3,000.00 was borrowed from his father to purchase the house and that the debt was subsequently forgiven as a Christmas gift to the parties. According to Tom, his father, on Christmas Day, delivered an envelope to the couple which contained an invoice reading "Credit Memo, from J.T. Underwood, Jr., to Tom and Agnes, $3,000.59." This evidence clearly supports the trial court's conclusion that the gift was marital property.

Next, Tom asserts that the court erred in assigning to him $35,000.00 of a previous advance for a down payment on a home purchased subsequent to the entry of the decree of dissolution. Tom argues that

only $10,000.00 of the down payment came from marital funds; the remaining funds came from monies earned by him after entry of the decree.

 The findings of fact do not address the manner in which the trial court arrived at its determination that the $35,000.00 constituted marital property.[2] Furthermore, the parties have not accurately directed our attention to those portions of the record which address this issue.

CR 52.01 requires that in all actions tried upon the facts without a jury, the court "shall find the facts specifically and state separately its conclusions of law thereon...." The Rule goes on to provide that "requests for findings are not necessary for purposes of review except as provided in Rule 52.04."

CR 52.04 provides that "[a] final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless the failure is brought to the attention of the trial court by written request for a finding on that issue or by a motion pursuant to Rule 52.02."[3]

In this case the court apparently did not make a factual finding regarding the $35,000.00. Because the parties did not request the court to do so, the error has been waived. *Cherry v. Cherry*, Ky., 634 S.W.2d 423, 425 (1982); *Whicker v. Whicker*, Ky.App., 711 S.W.2d 857, 860 (1986). Since we are unable to determine the court's reason for holding that the $35,000.00 constituted marital property, we will presume that its decision is correct.

Finally, Tom contends that it was error to require him to pay one-half of Agnes' uninsured medical expenses. Debts accrued subsequent to separation, but before entry of a divorce decree are rebuttably presumed to be marital debts. *Daniels v. Daniels*, Ky.App., 726 S.W.2d 705, 706 (1986). Inasmuch as the medical expenses were incurred prior to the dissolution of the parties' marriage, they are presumed to be marital obligations. Since Tom did not rebut this presumption, the trial court did not err in assigning a portion of the debt to him. *Spratling v. Spratling*, Ky.App., 720 S.W.2d 936, 938 (1986).

Accordingly, the trial court's order holding that a portion of the insurance agency was non-marital property is reversed and this case is remanded for proceedings consistent with this opinion. In all other respects, the trial court's order is affirmed.

EMBERTON, J., concurs.

STUMBO, J., concurs in part and dissents in part.

STUMBO, Judge, concurring in part and dissenting in part:

I concur with this opinion with the exception of the decision regarding maintenance. Given the apparently luxurious lifestyle of the parties during the marriage, the duration of the marriage, the non-liquid nature of the assets awarded the wife, and the husband's financial resources, I believe the award to be too low. I would increase the maintenance award to the amount Agnes will receive when Tom's pensions become payable, that is $1,800.90 per month, with Tom to receive credit against his monthly obligation as each pension does become payable.

---

**2.** Of course, there is a presumption that it was marital property. KRS 403.190(3).

**3.** CR 52.02 authorizes a party to move within ten days after entry of judgment for amendment of the judgment or for additional findings.